## HIGDON *et ux. vs.* THOMAS.—June, 1827.

A liberal construction is to be given to the Statute of Frauds. 29 *Car.* II, *ch.* 2. In relation to the *fourth* section thereof, it is settled, that if the name of a party appears in the memorandum of a contract, and is applicable to the whole substance of the writing, and is put there by him or his authority, it is immaterial in what part of the instrument the name appears, whether at the top, in the middle, or at the bottom. Forms are not regarded, and the Statute is satisfied, if the terms of the contract are in writing, and the names of the contracting parties appear.

So a bond, which recited the names of the parties to, and the terms of a contract for the sale of land, and contained a condition to secure a performance of such contract, prepared and written by the vendee, who was also the obligee of the bond, executed by an agent of the vendor, and delivered by him to the vendee, is a sufficient signing within the *fourth* section of the Statute of Frauds.

A technical authentication by signature is not necessary.

The phraseology of the *fourth* and *fifth* sections of that statute, as respects signing, is equally imperative, and substantially the same.

A receipt for the purchase money, in a deed for the conveyance of land, is only *prima facie* evidence of its payment.

Where an agreement does not designate the person to whom its consideration is to be paid, the law will raise an *assumpsit,* and this is always implied in favour of those who are the meritorious cause of action, or from whom the consideration moves.

The consideration being the sale of the wife's inheritance, in the absence of an express promise the law will raise one to the husband and wife, on which the husband may sue either in his own name, or in the names of himself and wife, and in such case, even if there was an express promise to the husband, the wife might be joined as plaintiff.

But a *feme covert* cannot be joined in an action to recover the price of property sold by her, and which belonged to her before coverture, or the value of services by her personally rendered, unless there be an express promise of payment to her. This distinction arises from rights which pass to the husband absolutely, and those which survive to the wife, and over which he has no power of transfer but by the consent and co-operation of the wife.

APPEAL from *Frederick* County Court. This was an action of *assumpsit* brought in the names of the appellants, (the plaintiffs in the court below,) against the appellee, (the defendant in

that court.) The declaration counted upon the contract recited in the bond, a copy of which will be found in the bill of exceptions; and also averred that the defendant was put into the possession of the land sold to him on the day of making such contract, and afterwards accepted from the plaintiffs a sufficient deed conveying the fee simple of the said land to him. It then assigned as a breach, the nonpayment of the four last instalments mentioned in the contract, and concluded to the damage of the plaintiffs, &c. The defendant pleaded *non assumpsit*, and issue was joined.

At the trial the plaintiffs gave in evidence the following instrument of writing, to wit: "Know all men by these presents, that I, *John S. Frazier*, of *Frederick* county, and state of *Maryland*, farmer, am held and firmly bound unto *Samuel S. Thomas*, of the same place, in the just and full sum of eight thousand dollars current money of *Maryland*, to be paid to him the said *Samuel S. Thomas*, his executors, administrators or assigns; to the which payment, well and truly to be made, I bind myself, my heirs, executors, administrators and assigns, in and for the whole, firmly by these presents. Sealed with my seal, and dated this tenth day of February eighteen hundred and thirteen. Whereas the said *John S. Frazier* hath been authorised by *Thomas Higdon*, of *Nelson* county, in the state of *Kentucky*, to contract with persons for the sale of his lands lying in *Frederick* county aforesaid, which he the said *Higdon* holds by virtue of his intermarriage with *Artemesia*, daughter and devisee of *Sarah Briscoe*. And whereas the said *John S. Frazier*, in pursuance of his said authority, contracted with the said *Samuel S. Thomas* for the sale of all the said *Thomas Higdon* and *Artemesia*, his wife's right, title, property, claim and interest whatsoever, legal and equitable, to all the land situate, lying and being, in *Frederick* county aforesaid, which they hold under the last will and testament of *Sarah Briscoe*, deceased, except so much thereof as lies in and near *Liberty-Town*, for which the said *Samuel S. Thomas* is to pay the sum of four thousand dollars current money, in the following manner; that is to say, one thousand dollars on the execution of this instrument of writing, one thousand in July next, and five hundred dollars annually thereafter, until the said four thousand

dollars be fully paid. The said *John S. Frazier* is to procure from the said *Thomas Higdon*, and his wife, deed for the above described lands, except as before excepted, investing him the said *Samuel S. Thomas*, his heirs, executors or assigns, with a good title in fee simple for the same, and is to have possession now; all suits that are now or may be hereafter brought, which may affect the title or possession of said land, and the necessary costs thence accruing, is to be paid out of the latter payments. Now, the condition of the above obligation is such, that if the above mentioned *Thomas Higdon* and *Artemesia* his wife, do and shall well and truly, by a good and sufficient deed, agreeable to the terms and agreement aforementioned, convey to the said *Samuel S. Thomas*, his heirs, executors and administrators, all the lands above described, except as before excepted, on or before the twentieth day of September next, then the above obligation to be void, otherwise of full force and virtue. *John S. Frazier*, Att'y (Seal.)

Signed, sealed and delivered, in presence of *Wesly Philips, Ignatius* M'*Attee.*

Received this 10th day of February, 1813, of *Samuel S. Thomas*, the sum of one thousand dollars, current money, in part payment of the above contract.

Pr. me        *John S. Frazier*, Att."

The plaintiffs also gave in evidence, that the said instrument was prepared and written by the defendant. and by him brought to *John S. Frazier*, for the purpose of procuring his *John S. Frazier's* signature to the same; that *John S. Frazier* did, in the presence of the defendant, sign, seal and deliver, the said instrument of writing, to the defendant. The plaintiffs also gave in evidence, that the defendant, on the 10th of February 1813, immediately after the execution of the said instrument of writing, and in pursuance thereof, was put into the possession of the lands mentioned in the said writing, by the said *Frazier*, and is still in possession of the same, and that the defendant on that said day, to wit, the 10th of February 1813, paid to the said *Frazier*, one thousand dollars. The plaintiffs also gave in evidence a deed dated the 9th of August 1813, executed by them to the defendant for the lands so contracted by the plaintiffs to be conveyed to the defendant. Which deed was made

in consideration of the sum of $4,000 to the said *Higdon* and wife, paid before the sealing and delivery thereof, the receipt whereof they thereby acknowledged, and was prepared at the instance of the defendant; and that the said deed after its execution, was delivered to, and accepted by the defendant, as a good and sufficient deed, and that the defendant, at the time of his acceptance thereof, said he wanted no other deed. The plaintiffs also gave in evidence another deed for the same lands, bearing date the 12th of April 1814, executed by the plaintiffs to the defendant.

After the above evidence was read and given to the jury, the plaintiffs closed their case. The defendant then prayed the opinion and direction of the court to the jury, that upon the evidence offered by the plaintiffs, they are not entitled to recover; which opinion the Court, [*Shriver*, A. J.] gave, and so directed the jury. The plaintiffs excepted; and the verdict being for the defendant, they appealed to this court.

The cause was argued at the last June term before EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Ross*, for the Appellants, contended, that the bond of *John S. Frazier*, the agent of the plaintiffs below, dated the 10th of February 1813, was sufficient evidence, ·

1. Of an agreement in writing, and signature by the party, or his agent, to gratify the Statute of Frauds. To prove this position, he cited 1 *Pow. on Cont.* 286, 287. *Ogilvie vs. Foljambe*, 3 *Meriv.* 61. *Kennedy vs. Lee, Ib.* 447, 448, 449, 450. *Coles vs. Trecothick*, 9 *Ves.* 250. *Clark vs. Wright*, 1 *Atk.* 13, *(note 1.) Welford vs. Beazely*, 3 *Atk.* 504. *Ballard vs. Walker*, 3 *Johns. Cas.* 65. *Clason vs. Bailey*, 14 *Johns. Rep.* 484, 486. *M'Comb vs. Wright*, 4 *Johns. Ch. Rep.* 663. *Batturs vs. Sellers & Patterson*, 5 *Harr. & Johns.* 119. It is not necessary that the agreement should be in writing; but the evidence of it must be in writing. *Randall vs. Morgan*, 12 *Ves.* 71. The bill of parcels is not to be considered as the contract itself; but it is a sufficient memorandum in writing of the contract within the meaning of the Statute of Frauds. *Batturs vs. Sellers & Patterson*, 5 *Harr. & Johns.* 120. If a letter contains the terms of an agreement, or acknowledges or refers to a former written one, then it takes it out of the Statute

of Frauds. *Clerk vs. Wright*, 1 *Atk.* 13, *(note* 1.*)* Where there is a complete agreement in writing, and a person who is a party, knows the contents, subscribes it as a witness only, he is bound by it[+]; for it is a signing within the statute. *Welford vs. Beazely*, 3 *Atk.* 504. Where A drew up a note of the agreement in writing, which B signed, but A did not sign, it was decreed the agreement of both; for A's drawing up the agreement in his own hand, and procuring B to sign it on his part, made the signing of B, not only a signing for himself, but also a signing as authorised by A to close the agreement. And if B had come into a court of equity against A, the court would have decreed the agreement against him. 1 *Pow. on Cont.* 287. This case was decided soon after the passage of the Statute of Frauds  The construction of the Statute of Frauds is the same in equity as at law; indeed the court of equity professes to follow the law. *Morrison vs. Turnour*, 18 *Ves.* 183. *Sudg.* 6. *M'Comb vs. Wright*, 4 *Johns. Ch. Rep.* 666. Forms are not regarded; and the statute is satisfied if the terms of the contract, and the names of the contracting parties, appear in the memorandum. *Coles vs. Trecothick*, 9 *Ves.* 252. *Morrison vs. Turnour*, 18 *Ves.* 180, *(note* 1.*)* *Clason vs. Bailey*, 14 *Johns. Rep.* 486. *Kennedy vs. Lee*, 3 *Meriv.* 447. *Batturs vs. Sellers & Patterson*, 5 *Harr. & Johns.* 119. As to the effect of the insertion of the name in the body of an agreement, as a signature within the Statute of Frauds, see *Batturs vs. Sellers & Patterson*, 5 *Harr. & Johns.* 119. *Clason vs. Bailey*, 14 *Johns. Rep.* 487, and the cases there cited. In the construction of all contracts, the situation of the parties, and the subject matter of the contract, are to be considered, in order to determine the meaning of any particular provision. *Wilson vs. Troup*, 2 *Cowen's Rep.* 196. By this rule let the question be decided, whether Mrs. *Higdon* was not a party to the contract.

2. That *Artemesia*, the wife, was not improperly joined in the action as one of the plaintiffs, he cited 1 *Chitty's Plead.* 19, 20. *Bashford vs. Buckingham, Cro. Jac.* 77, 205. *Guy vs. Livesey, Ib.* 501. *Aleberry vs. Walby*, 1 *Stra.* 229. *Bidgood vs. Way & Wife*, 2 *W. Blk.* 1239. *Or. vs. Fenwick*, 3 *East*, 106. *Philliskirk & Wife vs. Pluckwell*, 2 *Maule &*

*Selw.* 393. *Arnold vs. Revoult,* 5 *Serg. & Low.* 141. *The State vs. Krebs,* 6 *Harr. & Johns.* 37. *Reeves Dom. Rel.* 60, 61, 131, 132, 133.

*Palmer,* for the Appellee. 1. The evidence does not support the issue. 2. The receipt in the deed is *prima facie* evidence of payment. 2. There is a misjoinder of husband and wife in the action. It should have been in the name of the husband alone.

1. The action is brought on a contract recited in a bond given to the defendant below. There is a distinction between referring to a contract in a bond, and the contract itself. Some of the counts in the declaration set out a contract different from that recited in the bond. *Higdon* and *wife* were not bound to make the deed under the agreement made by *Frazier.* The wife was not bound by the contract either at law or in equity. *Bingh. on Infancy,* 300. *Emery vs. Wase,* 5 *Ves.* 848. *Sedgwick vs. Hargrave,* 2 *Ves.* 57. The contract cannot remain partly by writing, and partly by parol. *Stat. Frauds,* 29 *Car.* II, *ch.* 3, *s.* 4, 17. *Parkhurst vs. Van Cortlandt,* 1 *Johns. Ch. Rep.* 273, 282. The recital of the contract in the bond is not the best evidence which the nature of the case admitted of. The contract itself should be produced. *Phill. Evid.* 356. *Johnson vs. Mason,* 1 *Esp. Rep* 89. *Shelley vs. Wright, Willes,* 11 *Stroughton vs. Lynch,* 2 *Johns. Ch. Rep.* 222. The writing the name in the bond reciting a contract, is not a signing within the Statute of Frauds. *Rob. on Frauds,* 121. *Glynn vs. Bank of England,* 6 *Ves.* 39. *Jackson vs. Pierce,* 2 *Johns. Rep.* 221.

2. The receipt in the deed is *prima facie* evidence that the money has been paid. *Dixon vs. Swiggett,* 1 *Harr. & Johns.* 252. The receipt in the deed operated as an estoppel.

3. As to the misjoinder of the wife in the action, he cited 1 *Chitty's Plead.* 18, 22, 314. *Bingham on Infancy,* 300. *Sedgwick vs. Hargrave,* 2 *Ves.* 57. *Emery vs. Wase,* 5 *Ves.* 848. *Hall vs. Hardy,* 3 *P. Wms.* 189, *Innes vs. Jackson,* 16 *Ves.* 367. 1 *Madd. Ch.* 6. *Campbell vs. Jones,* 6 *T. R.* 570. *Pordage vs. Cole,* 1 *Saund.* 320, *(note* 4 *) Buckley vs. Collier,* 1 *Salk.* 114. *Bashford vs. Buckingham, Cro. Jac.*

17. *Bidgood vs. Way & Wife*, 2 *W. Blk.* 1236. *Yard vs. Ellard, Carth.* 462. 3 *Thomas's Co. Litt.* 312, *(note.) The State use of Rogers vs. Krebs*, 6 *Harr. & Johns.* 37.

*Ross*, in reply, as to the point that the receipt in the deed was conclusive evidence of the payment of the consideration therein expressed, cited *Shephard vs. Little*, 14 *Johns. Rep.* 210. *Bowen vs. Bell*, 20 *Johns. Rep.* 338. *Hamilton vs. M'Guire*, 3 *Serg. & Rawle*, 355. *Weigley's Admr. vs. Wier*, 7 *Serg. & Rawle*, 309. *Wilkinson vs. Scott*, 17 *Mass. Rep.* 257. *O'Neale vs. Lodge*, 3 *Harr. & M'Hen.* 433.

*Curia adv. vult.*

DORSEY, J. at this term delivered the opinion of the Court. It being conceded in argument, (as is unquestionably settled by authority,) that the receipt in a deed, for the conveyance of land, is only *prima facie*, and not conclusive evidence of the payment of the purchase money; in determining this cause, two questions only are necessary to be considered; and these, it must be admitted, are neither free from difficulty nor doubt.

Has the defendant signed a note or memorandum in writing of the agreement, as required by the statute of 29 *Car.* II, *ch.* 3? is the question which first presents itself. The nature of the requisite signature, in cases analogous to that now before us, although again and again examined and discussed in *England*, and elsewhere, does not appear heretofore to have been the subject of judicial scrutiny in this state. In *Lemayne vs. Stanly*, 3 *Lev.* 1, among the first cases upon the subject which arose after the statute, and which occurred only four years from its passage, after several arguments it was adjudged, that a will of lands in fee, in the handwriting of the testator, beginning "In the name of God, Amen. I *John Stanley* make this my last will and testament," &c. not subscribed by the testator, but subscribed by three witnesses in his presence, was a good will. "For (in the language of the court,) being written by himself, and his name in the will, 'tis a sufficient signing within the statute, which does not appoint where the will shall be signed, in the top, bottom or margin, and therefore a signing in any part is sufficient." This case turned on the construction of the *fifth*

section of the Statute of Frauds. The case before us depends on the intrepretation of the *fourth* section, but the phraseology of both sections, as respects signing, is equally imperative, and substantially the same. In *Knight vs. Crockford*, 1 *Esp. Rep.* 190, the doctrine of *Lemayne vs. Stanley* is established in a case arising under the *fourth* section. At the trial the plaintiff produced a memorandum of the agreement, beginning "I James Crockford, agree to sell," &c. but signed only by the plaintiff, and witnessed by one *Mills*. On the objection that the agreement was void within the Statute of Frauds, as not being signed by the defendant, it only beginning "I *James Crockford* agree," &c. and not having his name subscribed to it, *Eyre*, Chief Justice, held "that the agreement contained a sufficient signing within the Statute of Frauds, by beginning in the defendant's own handwriting, "I *James Crockford* agree," &c. In *Bawdes vs. Amherst*, 1 *Eq. Ca. Ab.* 21, Lord Chancellor *Cowper* said, "he knew of no case where an agreement, though wrote by the party himself, should bind, if not signed, or in part executed by him;" adding, that the agreement was susceptible of alterations or additions, and might have been entirely broken off.

Alterations made by the defendant in his own handwriting in the draught of an agreement, and a delivery thereof to an attorney to be engrossed, were held not to be a signing within the statute, in *Hawkins vs. Holmes*, 1 *P. Wms.* 770. In reply to the argument of the plaintiff's counsel on the plea of the Statute of Frauds and Perjuries, Mr. *Williams* answers, "that the statute requires that the party, or some person by him lawfully authorised, should sign the writing; and though the defendant had altered the draught with his own hand, yet this could not be called a signing; that the statute requires signing as a material circumstance, which is not to be dispensed with in equity any more than at law; that if the defendant had himself wrote over the whole deed with his own hand, without signing it, this had not been sufficient; for the statute has made signing absolutely necessary for the completion of the contract; for which purpose I cited the case of *Ithel vs. Potter*."

Referring to the case of *Hawkins vs. Holmes*, 1 *P. Wms.* 770, and *Ithel vs. Potter*, as there cited, *Sugden*, in his valua-

ble treatise upon the Law of Vendors, 55, (73,) states, that "the mere altering the draft of the conveyance will not take a case out of the statute; neither will the writing over of the whole draft by the defendant with his own hand, be sufficient, as there must be a signature. To this rule (he adds,) we may perhaps refer the case of *Stokes vs. Moore,* 1 *Cox,* 219, where the defendant wrote instructions for a lease to the plaintiff, in these words, viz. "The lease renewed; Mr. *Stokes* to pay the King's tax; also to pay *Moore* £24 a year, half yearly; Mr. *Stokes* to keep the house in good tenantable repair, &c. *Stokes,* the lessee, filed a bill for a specific performance, and the court of exchequer held it not to be a sufficient signing, to take the agreement out of the statute;" although it was not necessary to decide the point. In *Stokes vs. Moore,* the Lord Chief Baron, in delivering his opinion says, "this is no formal signature of the defendant's name, and the question is, whether so inserted and written by the defendant, is a sufficient signing? The purport of the statute is manifest, to avoid all parol agreements, and that none should have effect but those signed in the manner therein specified. It is argued that the name being inserted in any part of the writing is a sufficient signature. The meaning of the statute is, that it should amount to an acknowledgment by the party, that it is his agreement, and if the name does not give such authenticity to the instrument, it does not amount to what the statute requires." In the same case and to the same effect is Baron *Eyre* equally explicit. "The signature, (says he,) is to have the effect of giving authenticity to the whole instrument; and if the name is inserted so as to have that effect, I do not think it signifies much in what part of the instrument it is to be found; it is perhaps difficult, except in the case of a letter with a postscript, to find an instance where the name inserted in the middle of a writing, can well have that effect; and there the name being generally found in a particular place by the common usage of mankind, it may very probably have the effect of a legal signature, and extend to the whole; but I do not understand how a name inserted in the body of an instrument, and applicable to particular purposes, can amount to such an authentication as is required by the statute." The case, however, was decided on the ground, that the memorandum was

not the whole or final agreement between the parties. *Roberts,* in his treatise on the Statute of Frauds, 121, in commenting on the *signing* required by the statute, tells us "the place of the signature seems not to have been regarded as of much importance. If the name is inserted in any part of the *instrument,* it may operate as a signing under the Statute of Frauds; but then it must have been inserted for the clear and only purpose of giving authenticity to the instrument." The same principle is sanctioned by *Sugden,* in his Law of Vendors 56, (74;) and is recognized in *Ogilvie vs. Foljambe,* 3 *Merivale,* 52, in which the Master of the Rolls states, "it is admitted, that provided the name be inserted in such manner as to have the effect of authenticating the instrument, the provision of the act is complied with, and it does not much signify in what part of the instrument the name is to be found."

If the correctness of this general rule be admitted, for the establishment of which it must be confessed that the authorities, herein before referred to, are of the most imposing character, it cannot be contended, that the writing, upon which this action is founded, takes the case without the statute, as in no part of it is the name of the defendant written for the purpose of giving it authenticity, or acknowledging it to be genuine. But if these authorities be minutely and separately examined, they are not of that conclusive nature, which might be ascribed to them on a more superficial examination. The cases of *Lemayne vs. Stanley,* and *Knight vs. Crockford,* simply show, that a technical or formal signature is not requisite, and that a will or agreement without the subscription of the party making it, commencing, "I, A B," &c. if in his own handwriting, is sufficiently signed. Nothing is said of any general rule by which cases of this nature are to be tested.

The doctrine of Lord Chancellor *Cowper,* in *Bawdes vs. Amherst,* if received with the meaning usually ascribed to it, viz. that a formal signature is necessary, is contradicted by *Lemayne vs. Stanley, Knight vs. Crockford, Saunderson vs. Jackson, and another,* 2 *Bos. & Pull.* 238, and *Ogilvie vs. Foljambe;* and is denied to be law by Lord *Hardwicke* in *Welford vs. Beazely,* 3 *Atk.* 503, and its repudiation has been sanctioned by all subsequent writers upon the subject.

*Hawkins vs. Holmes* differs from the present case in many essential particulars. There the instrument was in the hand-writing of a stranger to the contract, and not of the party against whom it was attempted to be enforced. It does not appear, (nor, from the nature of the transaction is it at all probable that it were so,) that the writing of his own name was any part of the alterations made; nor if it were, that it was so inserted as to govern or be applicable to all the provisions of the contract.

*Ithel vs. Potter* not being reported, we know not that its facts bore any analogy to those now under consideration. 'Tis true Mr. *Sugden* understood Mr. *Williams* as asserting, that in *Ithel vs. Potter* it was determined, that the writing over the whole draft by the defendant, with his own hand, will not be sufficient. But the language of Mr. *Williams* would bear, and is perhaps grammatically more susceptible of a different interpretation, viz.—that the only purpose for which *Ithel vs. Potter* was cited, was as establishing the immediately preceding legal position, that "the statute has made signing absolutely necessary for the completion of the contract;" and that the assertion of Mr. *Williams*, that the writing over the whole draft by the defendant, with his own hand, will not be sufficient, was an inference of counsel by way of argument, supposed to be deducible from the decision in *Ithel vs. Potter*, that signing was absolutely necessary. At all events an equivocal statement of a case, in the argument of counsel, which has never been reported, is an authority of the most feeble character.

The bearing of the decision in *Stokes vs. Moore* is certainly not so easily obviated; as the similitude of that case to the one now before us, is much greater than that of any other of the cases herein before referred to. But of the doctrine in that case Lord *Eldon* is reported to have said he had some doubt. *(Vide Sug. Ven.* (55,) 73.) It may also be added, that the decision is in the nature of an *obiter dictum*, as the decree was pronounced, and bill dismissed, on the ground that the memorandum did not contain the whole or final agreement between the parties. Admit, however, the decision to be correct, and made too because the signing was not sufficient, it does not set-

tle the question now in controversy; the name, as there inserted, was only applicable to particular purposes, and did not necessarily connect itself with, and operate on every other part of the agreement. In Ogilvie vs. Foljambe, the Master of the Rolls, in a part of his opinion, sanctions the inference, that he did not use the word authenticating in its usual literal import, but in a sense entirely consistent with the plaintiff's right to recover.

This general rule, as to what must be the object in writing the name, which is necessary to constitute a signing within the statute, is of modern origin, and first presents itself in Stokes vs. Moore, decided in 1786; and is afterwards adopted by Sugden and Roberts, and by Sir Samuel Romilly in arguing the case of Morrison vs. Turnour, 18 Ves. 180, in which he states, that "a man thus describing himself in the third person, has never been decided to have signed within the act of parliament, which requires a signature as attesting what he has written. It is not necessary to sign it as an agreement; but he must sign. In the instance of the will, the name though in the beginning, authenticated the whole instrument, as that by which the testator meant to abide as his will, which is very different from a name occurring in the third person."

The object of the statute being to substitute written for oral evidence, and thereby prevent frauds, and perjuries, its almost contemporaneous exposition, in Lemayne vs. Stanley, announces to us, that a liberal and free construction is to be given to it; that substance, and not form, amounts to a compliance with its provisions, that if the name of a testator appear in any part of a will written by himself, it is sufficiently signed. The same principle is recognized in Knight vs. Crockford, and in Welford vs. Beazely; in deciding the latter of which cases the words of Lord Hardwicke are "the meaning of the statute is to reduce contracts to a certainty, in order to avoid perjury on the one hand, and fraud on the other; and therefore, both in this court, and the courts of common law, where an agreement has been reduced to such a certainty, and the substance of the statute has been complied with in the material part, the forms have never been insisted on." Can it then be denied, that such object of the statute is as completely gratified, as much certainty attained by the agreement here relied on, as if it had been

written in the first instead of the third person? It is not a re-finement upon subtlety, a total sacrifice of substance to form, to say, that if the agreement had commenced, "Whereas I, *Samuel S. Thomas,* have purchased of *John S. Frazier,*" &c. the signature is complete, the objects of the statute have been accomplished, and the contract is available; but if it com-mences, as it does here, "Whereas *John S. Frazier* hath con-tracted to sell to *Samuel S. Thomas,*" &c. there is is no sign-ing, the provisions of the statute have not been complied with, and the contract is a nullity. And yet such is the effect of this rule, and the construction which has been given to the authori-ties referred to. An absurdity so glaring will never be sanc-tioned by this court but upon authorities too conclusive to be disregarded. Nor does this famous rule appear to be con-sistent with the reasoning of the learned tribunal in the case in which it was adopted, or free from doubt or unshaken hy judi-cial decisions of the country in which it was promulgated. In *Stokes vs. Moore,* Baron *Eyre,* after stating the rule says "but I do not understand how a name inserted in the body of an in-strument, and *applicable to particular purposes,* can amount to such an authentication as is required by the statute." But if a case had arisen like the present, where the name is inserted in such a way as to control the whole agreement, and be appli-cable to every purpose of it, the inference would not be un-reasonable, from the learned Baron's own reasoning, that he did understand how it could amount to such an authentication as the statute requires. Moreover, the case of *Stokes vs. Moore,* is now understood to have turned, not upon the circumstance of the name being contained in the body of the instrument, but its being applicable to particular purposes only, and not go-verning the whole instrument: as fully appears from the opi-nion of the Master of the Rolls in *Ogilvie vs. Foljambe.* In which he says "it is admitted, that provided the name be in-serted in such manner as to have the effect of authenticating the instrument, the provision of the act is complied with, and it does not much signify in what part of the instrument the name is to be found. In *Stokes vs. Moore* the objection was that this authentication was wanting, the name being introduced incidentally in the middle of the paper, and referring, in gram-

matical construction only, to a single term in the conditions. There was no objection on the score of the christian name being wanting, *but the ground of the decision was, that the name, being introduced where it was, did not govern the entire agreement.*" From these remarks of the Master of the Rolls it manifestly follows, that he deemed an agreement, in the handwriting of a defendant, with his name so inserted in the body of it, as to govern the whole agreement, sufficiently signed within the meaning of the statute. That the name of *Samuel S. Thoms* is so inserted in the agreement in question cannot be denied, as it forms a part of every clause and provision which it contains. The case of *Saunderson vs. Jackson*, determined by Lord *Eldon*, whilst chief justice of the common pleas, is also strongly in favour of the plaintiff, and the decison of the supreme court of *New-York*, affirmed in the high court of errors, in *Clason vs. Bailey*, 14 *Johns. Rep.* 487, presenting the identical question before us, is of the most imperious authority. Chancellor *Kent*, in delivering his opinion, there states, that "it is a point settled, that if the name of a party appears in the memorandum, and is applicable to the whole substance of the writing, and is put there by him or by his authority, it is immaterial in what part of the instrument the name appears, whether at the top, in the middle, or at the bottom. Forms are not regarded, and the statute is satisfied if the terms of the contract are in writing, and the names of the contracting parties appear." This doctrine of Chancellor *Kent*, is so simple in its nature, so easy of application, so consonant to reason and common sense, that supported, as it is, by the opinions of Lord *Hardwicke*, Lord *Eldon*, and Sir *Wm. Grant*, it would be a safer guide to follow, than the technical rule to which the case of *Stokes and Moore* has given birth. Whether the name of the defendant therefore be so introduced as to authenticate the whole instrument or not, is deemed immaterial, if it be so inserted as to govern or be applicable to the whole substance of the writing.

If it be conceded that *Samuel S. Thomas* is liable to an action on the agreement, the next and only remaining question to be considered is, can such action be sustained in the joint names of *Higdon & Wife*, the present plaintiffs? The agreement,

designates no person to whom the purchase money is to be paid. View it then as a case of implied promise. Where the law is left to raise the *assumpsit*, it is always implied in favour of those who are the meritorious cause of action, or from whom the consideration moves. The consideration here being the inheritance of the wife, in or over which, during his life only, has the husband any interest or control, in the absence of an express promise, the law will raise one to husband and wife, on which the husband may, at his pleasure, either sue in his own name, or in the names of himself and wife. But suppose it be considered that the agreement does amount to an express promise to pay to the husband; is it not perfectly consistent with legal principles, in analogous cases, that the husband having acted, by the consent of the wife, concerning a subject matter over which he had no power or control but in virtue of such consent, shall be deemed to have acted on the account, and for the benefit of himself and wife. Nor would his concealment of the principles on which he acted at all vary the case. It is every day's practice for the owners of merchandize, or other property, to sue in their own names on contracts of sale made by their agents, to whom express promises to pay have been made, and with whom the vendee's dealt, as sole owners of the property, having no knowledge of their principals. So, also where one part-owner sells, as his own, the property of his firm, all the partners may sue. But there could be no concealment from the defendant of the intentions with which *Thomas Higdon* acted through his agent, *John S. Frazier*, as the condition of the bond of conveyance is, that the deed to *Samuel S. Thomas* shall be executed by *Higdon* and *Wife*. That the defendant is in anywise damnified by the present form of action, has not been even insinuated.

It is not intended to impugn the numerous decisions which have been cited, that a *feme covert* cannot be joined in an action to recover the price of property sold by her, and which belonged to her before coverture; or the value of services by her personally rendered, unless there be made to her an express promise of payment. But these decisions apply only to cases of goods and chattels, which by the marriage vested absolutely in the husband; as does the right of her personal services, and

are wholly inapplicable to a case where the rights of the wife pass not to the husband, but remain and survive to her, and over which the husband has no power of transfer, but by the consent and co-operation of the wife.

Being of opinion that, upon the whole circumstances of the case, the plaintiffs are entitled to recover, and in the form of action too in which they have sought to prosecute their rights, we reverse the judgment of the county court.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.