## JAMES W. SMITH AND MICHAEL F. SECRIST vs. CHAS. W. GOLDSBOROUGH AND GEO. W. HOFFMAN, ELI ALBAUGH, MARY E. AL-BAUGH, OLIVER D. LEASE AND MINERVA LEASE vs. CHAS. W. GOLDSBOROUGH AND GEO. W. HOFFMAN.

*Opening Roads—Jurisdiction of County Commissioners—Petition—Signature—Appeal.*

Under Code, Art. 5, secs. 81, 82, upon an appeal from the determination of the County Commissioners concerning the opening of a new road, to the Circuit Court, the action of the Circuit Court is final and no appeal or writ of error lies to the Court of Appeals, where the orders passed, notices given, etc., meet the requirements of the law. so far as jurisdictional questions are concerned.

The form of the verdict and the judgment of the Circuit Court in such case cannot be reviewed by the Court of Appeals.

Where parties file with the County Commissioners a petition for opening a new road, sworn to by one of them, and in subsequent proceedings adopt the same as their own, they cannot avoid any liability under Code, Art. 25, secs. 83, *et seq.*, by reason of the fact that they did not sign the petition at the end.

The omission to sign their names at the end of the petition was a mere irregularity, and did not render the petition or the subsequent proceedings void, or prevent the County Commissioners from taking jurisdiction of the case.

An order of the Board of County Commissioners determining that the public convenience of the community requires that the new public road, as laid down upon a survey, shall be opened, is a sufficient compliance with the provisions of the Act of 1892, ch. 426, sec. 95A, requiring the Commissioners to select such route as will *best* promote the public convenience.

The. Commissioners may state their determination as to the public convenience, in the order appointing the Examiners.

The objection that the Examiners in executing the commission ignored the rights of a party alleged to be a tenant in possession of part of the land taken, cannot be considered by the Court of Appeals, when there is no evidence in the record to show that he was such tenant, or that his holding was such as to entitle him to be considered.

If the report of the Examiners was prematurely ratified by the Commissioners, that was a mere irregularity to be corrected on appeal to the Circuit Court.

Writ of error and appeal from the Circuit Court for Frederick County.

On September 6, 1892, the appellees, Goldsborough and Hoffman, gave public notice by due advertisement in " The Examiner," a newspaper published in Frederick County, that on the 17th day of October, 1892, they intended to petition the County Commissioners of Frederick County, for the locating and opening of a public road in that county described in their notice. This notice was published once a week, for six successive weeks, prior to the 17th day of October, 1892. On that day they filed their petition with the County Commissioners, alleging that they are citizens of Frederick County, that they had given the notice in question, a certified copy of which they filed with their petition, that the notice was duly published for thirty days, that the public convenience requires the opening of the road, and they therefore prayed for the opening of the road according to law. This petition was duly sworn to by Charles W. Goldsborough, but did not appear to have been signed.

The County Commissioners thereupon passed an order setting the petition and any counter-petitions that might be filed down for hearing on the 21st day of November, 1892, and ordered the clerk of the board to give notice to the owners of the land through which it was proposed to locate and open the said road, that the matter would be taken up on the 21st of November, 1892. Subsequently a number of citizens and tax-payers of the county, including some of the appellants, filed with the County Commissioners a protest against the granting of the petition.

The Commissioners heard counsel and witnesses on both sides, after service of notice on the parties in interest; and also visited the locality in person in order to decide whether the proposed road was required by public convenience. On March 30, 1893, they appointed R. A. Rager, special surveyor, to make a plat of the proposed road, upon the location determined upon by them. After the return of his

survey the Commissioners passed an order, on April 18, 1893, reciting their previous action and deciding that " upon consideration of said report, location, survey and plat so made by the said Rufus A. Rager, it was and is further ordered that the same be, and it is hereby approved, as and for the location, survey and plat of said new public road, which as hereinbefore recited and declared, the Board of County Commissioners of Frederick County have determined and decided, and do determine and decide that the public convenience of said community requires to be opened, the same differing somewhat from the line of the public road petitioned for by said Goldsborough and Hoffman, but being laid out, surveyed, located and platted according to the decision of this board as a public road, that will better serve the public convenience of said community than the road petitioned for by said Goldsborough and Hoffman, while at the same time it does not pass through the lands of any person or persons other than those mentioned in the petition of the said Goldsborough and Hoffman." ·

In an order passed on the next day appointing Examiners to appraise the damages which the several owners would sustain by the opening of the road, it was recited that the " County Commissioners have determined upon the location of said road which in their judgment will best promote the convenience of the community through which it is proposed such road shall run."

On June 20, 1893, the report of the Examiners was ratified in every particular, except that the amounts awarded as damages to Goldsborough and Hoffman were cut down to five dollars each. From this action the appellants appealed to the Circuit Court for Frederick County. Several motions to quash the proceedings were overruled by the Court (LYNCH and VINSON, JJ.), and on January 11, 1894, a jury rendered a verdict for the petitioners and assessed the damages. A motion in arrest of judgment was overruled and the Court ordered and adjudged that the public road as laid down upon the survey, etc., be opened as a county road by

the County Commissioners, and that before said road is opened the said Commissioners pay or tender the sums assessed as damages by the jury.

Thereupon the appellants prayed that the record might be removed to the Court of Appeals, as upon writ of error, assigning eighteen reasons.

The cause was argued before ROBINSON, C. J., BRYAN, BRISCOE and BOYD, JJ.

*William P. Maulsby, Jr.*, and *Milton G. Urner* (with whom were *J. Roger McSherry, Clayton O. Keedy* and *Hammond Urner,* on the brief), for the appellants.

The only question involved is one of jurisdiction. If the Circuit Court for Frederick County was without jurisdiction to pass the judgment appealed from, then the case is properly in this Court, either upon the appeal or writ of error. This proposition is too well supported by numerous decisions of this Court to require a citation of authorities here, but see: *Mears* v. *Remare*, 33 Md. 246; *Burrell* v. *Lamm*, 67 Md. 580; *Poe's Plg. and Practice*, vol. 2, sec. 826. "If the County Commissioners had no jurisdiction the Circuit Court would have none." *Greenland* v. *Co. Comms. of Harford Co.* 68 Md. 63.

This is a case in which the private property of the citizen is sought to be taken for public use against his consent. The power to do this is primarily conferred by law upon the County Commissioners, a tribunal of limited jurisdiction. They are required to act *strictly* within the jurisdiction conferred upon them by the law and there is no legal presumption in favor of their jurisdiction, but every jurisdictional fact must affirmatively appear upon the face of the record. *Winchester* v. *Co. Comms. Cecil County*, decided Oct. Term, 1893; *Friedenwald* v. *Shipley*, 74 Md. 228 *et seq.*; *Barrickman* v. *Comms. of Harford Co.* 11 G. & J. 56; *Chicago* v. *Rock Island R. R. Co.* 20 Ill. 286; *Hall* v. *Howd.*, 10 Conn. 520; *Sharp* v *Speir*, 4 Hill 76–89.

Before the County Commissioners of Frederick County can exercise the extraordinary power of divesting a citizen of his property for the purposes of a public road there must be: 1. A publication of a notice of an intention to petition. 2. The filing of a petition duly signed. 3. A determination by the Co. Commissioners that the *public* convenience requires a road. 4. A determination by the Commissioners upon the location which in their judgment will best promote the public convenience. (Act 1892, chapter 426, secs. 95 A and 95 D.) 5. The valuation and ascertainment of "the damage that may be sustained by each person through whose lands the road will pass."

Without the filing of a proper petition the County Commissioners could have no jurisdiction. The signature of the petitioner to the paper filed as a petition is absolutely necessary to give it validity. The sound and invariable practice has been to require all papers addressed to any tribunal to be signed. This practice is founded upon wise policy and we know of no exception to the rule.

" No bill can be regularly filed without being signed in person or by counsel." *Eveland* v. *Stevenson*, 45 Mich. 396; *Wright* v. *Wright*, 8 N. J. Eq. 153; *Chitty's Equity Index*, 5 vol. page 5323. "The declaration has always been required to be signed by some one, *in all Conrts*, and this signature is usually the test to determine who appears." *Benalleck* v. *People*, 31 Mich. 203. Exceptions filed to an answer in Chancery must be signed. *Hitchcock* v. *Rhodes*, 42 N. J. Eq. 496. A protest against the assessment of duties under Act of Congress of June 10th, 1890, is required to be signed. See opinion of Judge Somerville, June 22d, 1893. Decisions of Genl. Apps. 2197. The necessity of the signature has been recognized by this Court in *Galloway* v. *Shipley*, 71 Md. 243; *Gaither* v. *Watkins*, 66 Md. 576; *Bragunier* v. *Penn*, 79 Md.

But even if the petition had been signed, it was necessary that all further proceedings should affirmatively appear to be within the scope of the jurisdiction conferred. *Whitely* v.

*Platt Co.*, 73 Mo. 31 ; *Sharp* v. *Spier*, 4 Hill, 84 ; *Dupont* v. *Highway Comrs.*, 28 Mich. 362 ; *Tireman* v. *Drain Comrs.*, 40 Mich. 177 ; *Lane* v. *Burnap*, 39 Mich. 736 ; *Windsor* v. *McVeigh*, 93 U. S. 274–284.

While the Commissioners selected a location different from the one petitioned for, and one which in their opinion would *better* serve the public convenience, they did not select the one which would *best* promote the public convenience in their opinion, as they were required to do before they could proceed further.    They were not authorized to open any other road.    This is a substantial and important requirement and the property owners, as well as the public, have a right to insist that it be complied with.    The failure to comply vitiates the proceedings.    The judgment entered of record shows what the Commissioners determined, and we can look alone to that to ascertain their determination or judgment. The recital in the commission to the Examiners subsequently issued, and which was only authorized to be issued *after* the determination upon the location that would in the judgment of the Commissioners *best* promote the public convenience, could not, even if it had been in proper form, cure the defect of the previous judgment.    " The validity of an order cannot be presupposed for the purpose of proving by its recital that a preliminary step essential to its validity was actually taken." *Tefft* v. *Hamtranck*, 38 Mich. 560.

The commission was issued to Examiners, notwithstanding the preliminary requirement had not been complied with, and who were required to make their return on the 6th day June, 1893.    The Examiners proceeded in the execution of the commission, but utterly ignored the rights of one F. T. Musser, the lessee in possession of one of the farms, through which the road was to run.    He was an " owner " within the meaning of the law.    *Piedmont & Central R. R. Co.* v. *Spielman*, 67 Md. 275 ; *B. & O. R. R. Co.* v. *Thompson*, 10 Md. 80 ; *N. Penn. R. R. Co.* v. *Davis*, 26 Pa. St. 238 ; *Lister* v. *Lobley*, 7 A. & E. 86 ; *Watson* v. *N. Y. Cent. R. R. Co.*,

47 N. Y. 162; *Rentz* v. *City of Detroit*, 48 Mich. 547. *Lewis on Eminent Domain*, Secs. 335 and 341.

The judgment of the Circuit Court was *coram non* for the additional reason that it had no power or authority to ·enter the same upon the verdict rendered. The verdict was simply " For the petitioners and assess damages to, &c."

That verdict was clearly defective. It did not describe the road they found would best promote the public convenience, if they intended to find any such fact. This case was in the nature of a proceeding *in rem* and the verdict should have sufficiently described the *res*. Assuming that Goldsborough and Hoffman filed a petition, this petition was for a different road from that the Commissioners attempted to locate, and if the verdict has any meaning at all it is that the jury found in favor of the road petitioned for by the " Petitioners." But a public road is not the " Petitioners' " road.

The owner of property has a constitutional right to have a jury pass upon the question and render a verdict that is clear and explicit before his property can be taken. The Court has no right to make a verdict for the jury. *Gaither* v. *Wilmer*, 71 Md. 361 ; *McKnew* v. *Duvall*, 45 Md. 511 ; *State* v. *Carleton*, 1 Gill, 259 ; *Hughes* v. *Howard*, 3 H. & J. 11 ; *Negro Bell* v. *Jones*, 10 Md. 332 ; *Miles* v. *Knott*, 12 G. & J. 310 ; *Holmes* v. *Wood*, 6 Mass. 2.

On appeal the Circuit Court had no authority beyond that given it by statute providing for the exercise of its jurisdiction on appeal, and the judgement it had power, *i. e.* jurisdiction to give was such an one as the Commissioners should have given. The Court had no jurisdiction to give a judgment in any wise except upon the facts found by the jury. What fact was it essential that the jury should find to enable the Court to give such judgment as the Commissioners should have given ? Plainly, we submit, the fact to be ascertained by the jury was what location of road would *best* subserve the public convenience. But the jury never found by their verdict any road or location whatever as *best* suited

to subserve the public convenience. How then can it be contended that there ever was an exercise of the jurisdiction of the Court to render such judgment as the Commissioners should have rendered, when the very life of the whole matter, the *best* road, was never passed on at all by the jury?

*John P. Poe, Attorney-General,* for defendants in error and appellees; *Frederick J. Nelson* for the appellee, Goldsborough; *John C. Motter* and *J. E. R. Wood* for the appellee, Hoffman.

BOYD, J., delivered the opinion of the Court.

This case was commenced by an application by Charles W. Goldsborough and George W. Hoffman, the appellees, to the County Commissioners of Frederick County, for the opening of a public road in that county, and the question presented for our consideration is whether the Circuit Court had jurisdiction to enter the judgment complained of on an appeal taken to that Court from the decision of the County Commissioners. It must be, and is conceded that this Court has no authority to review the action of the lower Court if the latter had jurisdiction in the premises and that question is presented by a motion to dismiss the writ of error and appeal.

In the Circuit Court the appellants filed a motion to quash the proceedings before the County Commissioners, and afterwards made a motion in arrest of the judgment. The petition for the writ of error assigns eighteen reasons why the appellants feel aggrieved at the decision below. Many of the points raised manifestly do not affect the question of jurisdiction and were not presented in this Court, but it was earnestly contended by the learned attorneys for the appellants that there were certain defects in the proceedings which are jurisdictional questions, and which we will therefore consider.

*The Court declined to hear counsel for the appellees.

Sec. 83 of Art. 25 of the Code of Public General Laws provides that "All applications for opening, altering or closing roads shall be by petition to the County Commissioners." Sec. 84 provides that when any citizen of any county intends to petition the County Commissioners for opening, altering or closing any road, he shall give thirty days notice thereof in one or more of the newspapers published in the county. Sec. 85 authorizes counter petitions to be presented. The Act of 1892, chap. 426, substitutes five sections for sects. 86, 87, 88, 89 and 90 of Art. 25, so far as they apply to Frederick County.

On Oct. 17, 1892, a petition was filed with the County Commissioners, but was not signed at the end by the appellees, or any one for them, and it is contended by the appellants that this was necessary to give the County Commissioners jurisdiction. It was addressed to the County Commissioners of Frederick County, and begins :

"Your petitioners, Charles W. Goldsborough and George W. Hoffman, respectfully represent unto your Honorable Board." It alleges that they are citizens of Frederick County, and that on Sept. 6th, 1892, they gave notice in the " Examiner," a newspaper published in said county, of their intention to petition to the Commissioners on the 17th Oct., 1892, for the opening of a certain public road described in the notice, a copy of which they filed, &c. It concluded with, "Your petitioners therefore pray your Honorable Board for the opening of said road according to law." An ·affidavit was annexed in which Charles W. Goldsborough made oath that the matters and things set forth *in the petition* are true, etc.

The copy of the notice published in the " Examiner " has the names of Charles W. Goldsborough and George W. Hoffman attached to it.

A counter petition signed by a large number of citizens and taxpayers of Frederick County, *including all the appellants*, was filed protesting " against the petition filed by Charles W. Goldsborough and George Hoffman for the

opening of a public road mentioned in said petition," etc.
A few days afterwards Mr. and Mrs. Albaugh filed a more
formal counter petition, and on Nov. 18, 1892, Michael F.
Secrist, Elias V. Albaugh, Mary E. Albaugh and James W.
Smith, by their attorneys, asked the Commissioners to fix a
day for the hearing of testimony for the counter petitions
filed and also as to the road petitioned for.

The record shows that the appellants were represented by
attorneys in these preceedings before the County Commis-
sioners, although it fails to show that any objection was
made to the petition on the ground now being considered
until Sept. 11th, 1893, when it was assigned as one of the
reasons why the Circuit Court should quash the proceed-
ings.    It is perfectly apparent that the appellees adopted
the petition as their own from the time it was presented to
the Commissioners to the end of the case.

They could not avoid any liability which attached to the
petitioners for public roads under the statute by reason of
the fact that they had not signed the petition at the foot.
It may be possible that they did actually sign it, and that
the Clerk of the Commissioners omitted their signatures
when making up the record.    We do not want to be under-
stood as basing our opinion on that possibility, however,
and we only refer to it for the purpose of showing what
injustice might be done by parties to such controversies
waiting until the case is appealed to the Circuit Court and
there, for the first time, raising the question.    We must
not overlook the fact that County Commissioners are ordi-
narily not lawyers or accustomed to or acquainted with
technical pleadings.    They are selected from the people at
large and much of their business is transacted without the
assistance of those learned in the law.

Whether or not the petition was in the handwriting of
the petitioners does not appear from the record, but whether
it was written by them or by some one for them, it was
adopted by them, and although the proper place for their

signatures is at the end of the petition, it would be valid if signed in some other part.

If some one else had signed the names of the petitioners at the end of this petition at their request, or if such signatures had been afterwards ratified by them by filing the petition with the Commissioners, one of them swearing to it, and both endeavoring to sustain it before the Commissioners and in the Circuit Court, could it be successfully contended that it was not their petition? This Court in *Higdon* v. *Thomas*, 1 H. & G. 139, and in *Drury* v. *Young*, 58 Md. 546, decided that it is immaterial in what part of an instrument the name appears in order to comply with the requirements of the Statute of Frauds. The sections of that statute under consideration in these cases require the memorandum, etc., *to be signed* by the party or his agent, whilst the statute under which this proceeding was commenced does not so require in terms, although it was doubtless intended that the petition should be signed or adopted in some way so as to avoid any question as to who the petitioners were. Under the circumstances of this case there can be no doubt about the fact that the appellees were the petitioners, and that they would be responsible for costs and such other liabilities as might attach to parties petitioning for public roads. The omission to sign their names at the end of the petition was a mere irregularity, and did not render the petition or the subsequent proceedings void, or prevent the Commissioners from taking jurisdiction of the case. To hold proceedings before County Commissioners to such technical accuracy might render nugatory and void many transactions in reference to public roads and other matters.

No technical pleading is required or contemplated by the the law in matters before them. Whilst it is true that their jurisdiction is limited, Courts should not be eager or inclined to interfere with their control over matters intended for them, because the proceedings have not been conducted in the regular and orderly way that is to be expected in Courts of

record, where the business is transacted by those especially trained for the purpose..

This is particularly so when the parties raising the technical objections have not been in any way injured thereby and recognized the validity of the instrument, so far as the alleged defects are concerned, by their conduct throughout whilst the case was still before the Commissioners.

Following the order of questions presented by appellant's brief, the next point is that the Commissioners had no jurisdiction to proceed to take private property or appropriate public funds for a public road until they had determined " upon such location or route as in their judgment will *best* promote the public convenience," as required by the Act of 1892, Chap. 426, Sec. 95A; and that the record of the action of the Board does not show this to have been done.

On March 22nd, 1893, the Commissioners, upon consideration of the petition of the appellees and of the counter-petitions, passed an order that the board visit, as a body, the locality in which it was proposed to open the public road petitioned for, to ascertain the required convenience of the community, &c., which order was authorized by and followed very closely the exact language of Section 95A. On the 30th of March, 1893, the Commissioners appointed a surveyor to survey and make a plat of the proposed new road upon the location determined upon by them. The survey and plat were made and returned to the Commissioners by the surveyor on April 4th, 1893. On April 18th, 1893, the board filed an order in which they recited the transactions in considerable detail, and after referring to their visit to the locality, stated that they "did ascertain and determine that the *public convenience* of said community *does require* the opening of a new public road in said locality, but did also ascertain and determine that the public convenience of said community will be better served by the adoption of a location somewhat different from that mentioned in the said petition of said Goldsborough and Hoffman."

Almost the exact language of the statute is used in the above quotation—the statute adding, however, that if they determine the facts stated above " they shall cause a survey and plat of the proposed new road or alteration to be made by a competent surveyor upon such location or route as in their judgment will best promote the public convenience.". The latter is the language relied on by the appellants. In the above mentioned paper the board, after further reciting the appointment of the surveyor, his return and plat, their approval of it, &c., then concludes as follows : " And upon consideration of all the premises the Board   *   *   *   * do now adjudge and determine that the *public convenience* of the community through which said new public road is prayed and proposed to be opened *does require* that the said *new public road,* as *laid down upon said survey and plat* of *said Rufus A. Rager,* surveyor appointed to make the same, *shall be opened,* and it is thereupon, on this 18th day of April, 1893, accordingly so ordered and determined."

It is difficult to see how the determination of the Commissioners that the road as laid down on the plat of the surveyor would " best promote the public convenience," could be more clearly or more forcibly expressed than to say that the public convenience *required this particular road* to be opened. The use of the word " better " instead of " best," in the connection in which it was used, simply followed the exact language of the statute, and when it was said that the public convenience *required* the adoption of the road laid out by the surveyor that embraced the fact that it would *best promote* the public convenience. But if there were any room for contention on that question the order of the Commissioners appointing Examiners recites that the "Commissioners have determined upon the location of said road, which in their judgment *will best promote* the convenience of the community." One order is as much a part of the record as the other. There is nothing in the statute which would prevent the Commissioners from stating their

determination as to the public convenience, etc., in the order appointing the Examiners.

The objection urged that the Examiners, in proceeding to execute the commission, ignored the rights of one F. T. Musser, who is alleged to be a tenant in possession of the farm of James W. Smith, cannot be considered by this Court. There is no evidence in the record that he was such tenant or, if he was, that his holding was such as to entitle him to be considered. His tenancy, for example, might have expired before the road could be commenced.

If there was any error in ratifying on June 20th, 1893, the report of the Examiners, which was filed June 3d, 1893, it is clearly not a jurisdictional question. If it be admitted that the confirmation was premature, which we do not de-·cide was the case, it was a mere irregularity to be corrected on appeal to the Circuit Court. *Gaither* v. *Watkins*, 66 Md. 582.

So far as the form of the verdict and the judgment of the Court thereon are concerned, this Court is powerless to give the appellants any relief, if we assume there was error, as the law has not given it authority to review the decision of the Court below. The latter had jurisdiction to enter up the judgment and whether properly done or not its action cannot be reviewed by us.

. We have thus referred to the principal points raised by the appellants, and have also carefully examined the other reasons assigned as errors, and we are of the opinion that the County Commissioners and the Circuit Court had jurisdiction in the case, and the action of the latter is final. Sections 81 and 82 of Art. 5 (which are still in force in Frederick County, as they were not repealed by the Act of 1892) authorize an appeal from the County Commissioners to the Circuit Court, where either party has a right to a trial by jury.

That Court is, by Section 82, " authorized to ratify, reject, alter or amend the proceedings before the County Commissioners and in said Court, so as to bring the merits of the

case fairly to trial, and the said Court is hereby further authorized to pass such judgment in the case as the County Commissioners ought to have passed, including costs ; *and such judgment shall be final* and may be enforced by due process of law."

The powers thus given are very broad. The County Commissioners have original jurisdiction conferred on them, the Circuit Court is the Appellate Court and no right of appeal is given to this Court.

The record in this case discloses the fact that the proceedings before the Commissioners were conducted with great care and unusual particularity. The omission of the signatures of the petitioners at the usual place is the only evidence of any want of care, which was doubtless a mere oversight, and we have determined that there is nothing in that omission to render the proceedings void. The orders passed, the notices given and other acts done meet the requirements of the statute—certainly so far as they affect any jurisdictional questions. Such being the case and the Circuit Court having jurisdiction as the Appellate Court and its judgment being made final by the language of the statute, it follows that this Court is without authority to review the action of the Court below as has been determined by numerous cases in this State.

We will only refer, in addition to 66 Md. 582, *supra*, to *Greenland* v. *County Commissioners*, 68 Md. 62 ; *Rayner* v. *State*, 52 Md. 374 ; *Judefind* v. *State*, 78 Md., and *Moores* v. *Bel Air Water Company*, decided at the last term of this Court.

It follows from what we have said that the writ of error must be quashed and the appeal dismissed.

> *Writ of error quashed and the appeal dismissed.*