THIBODEAUX *v.* HAVENS.

[77 South. 313, Division B.]

1. TAXATION. *Tax sale. Validity.*
   Whenever there is a legal bidder at a tax sale the collector must make title to him and in that case any sale to the state is void, the bidder would have a right to the deed and the collector could not deny or limit that right by a conveyance to the state.

2. TAXATION. *Tax sales. Presumptions.*
   The statutory presumption that a tax deed to an individual conveyed a perfect title, except for certain defenses, is not overcome by the fact that the land was also sold to the state at the same time, since the deed to the individual purchaser conclusively established that there was a bidder, that the money was paid to the collector and the deed executed and it necessarily follows that the deed to the state in such case was a nullity.

3. TAXATION. *Tax deed. Presumptions.*
   Where a tax deed recites a legal sale in the absence of proof to the contrary, it will be presumed that the deed recites the facts.

APPEAL from the chancery court of Jackson county. HON. C. H. WOOD, Special Chancellor.

Bill by Mary F. Havens against W. E. Thibodeaux. From a decree for the complainant, defendant appeals. The facts are fully stated in the opinion of the court.

*Denny & Heidelberg,* for appellant.

In the case of *Bell* v. *Gordon,* 55 Miss. 45, the court says: "A tax deed raises the presumption that all was done which the law required to be done and that the land was sold in the smallest legal subdivisions." The court has since, in the case of *Green* v. *Williams,* 58 Miss. 759, and *Wheeler & Wilson Manufaxturing Co.* v. *Ligon,* 62 Miss. 564, re-affirmed this doctrine announced above and, in our opinion, then, there can be no question as to everything being legal up to the time of the execution of this deed.

As to the sale of said lands to the state of Mississippi it seems to us that about the same contention is made as to that sale being illegal as there is to the sale to Delmas being illegal. Certainly there is nothing in this record that would suggest any illegality as to either sale except the fact of the supposed double sale. As to that particular feature we submit that there can be no contention under the pleadings and the evidence in this case that the taxes were not due and owing, as we have attempted to show to the court, above the sale of said land was essential because the taxes were not paid.

Under the allegations of the bill and amended bill and under the proof, this record presents the situation to our minds not unique, but one in which property condemned for taxes, and there is no contention contrary to this, that this land was either sold to the individual or to the state, and one sale or the other must have been good, and since the appellant is now vested with the chain of title created by this non-payment of taxes, it seems to us that, until the appellee can show to the court, by some sort of evidence, something in connection with the sales and make this void, she should not be allowed to come into court, and, by the mere proof that there was a mistake made by the tax-collector in the preparation of the records concerning the alleged tax sale, and the appellee not show or prove that which she avers of the two sales was good in law and fact. That because of the mistake in the record as to the other attempted sale, especially in the light of the Law of 1878, which says: "All conveyances hereinafter provided shall vest in the purchaser or the state, as the case may be, a perfect title to the land sold for taxes and no such conveyance or list as between the original parties, or subsequent alienees, shall be invalidated, nor shall any defense offered against the title thus conveyed be good in any court in this state, except by proof that the taxes for which said land was sold had been paid or tendered to the proper officer before sale, or that the taxes were

illegal in part, and that before the sale the tax payer tendered to the proper officers the amount of legal taxes due on said land.''

The first Monday of March, 1880, was the time and J. R. E. Clark was the tax-collector. Under the pleadings, the taxes were due and owing upon the lands involved herein. All the necessary record steps going to make up the title secured by Delmas are regular and legal, the same is true of the record showing that the title went to the state of · Mississippi. Here are two silent witnesses that show that the taxes were not paid.

The appellee by her pleadings and by the lack of evidence to the contrary show the same thing. Both tax sales, of course to the contrary show the same thing. Both tax sales, of course, could not be good because the land could not be sold both to the state and to Delmas, and Delmas or the state of Mississippi, one or the other, did get a tax title, but which of the two the land was sold to first, the attempted sale to the other would not be good.

Appellant is now vested with both of these, one or the other certainly vested in him title. As to which one we are not concerned, and it is not for us to say which title one or the other must stand.

*White & Ford,* for appellee.

It would be difficult to conceive, we submit, of a tax sale, more palpably void and unlawful than this. It is admitted and the record shows beyond question that the tax collector sold the same piece of land to an individual and to the state on the same date. We contend that both of these sales were void. Appellant contends that probably one of them was void, but inasmuch as he holds the beneficial interest of both of them the court cannot say that both were void, and therefore he has title. That is the gist of the argument.

We shall deal with the sale of the land to the state first. At the time these tax sales were made, the Laws of 1878 were in effect. This legislation appears at pages 23 to 83 of the published Laws of 1878. Section 40 appearing at page 45, provides: "That if upon offering all the land of any delinquent tax-payer, no person will bid for it, the whole amount of taxes and all costs, the tax collector shall strike off the same to the state." It is manifest that it was the duty of the tax collector first to get the bids of individuals, and if no one bid for it the amount of taxes, then the land should be struck off to the state. We insist, therefore, that the tax collector had no right to sell the land to the state except where there was no bidders at all, or where no one bid the amount of taxes. This proposition is so manifestly correct, we think that no citation of authority is necessary to support it. We know, as a matter of fact from what the record shows, that the tax-collector did receive a bid sufficient to pay the amount of the taxes on the land for the reason that he actually sold the land to Chas. H. Delmas to whom he executed the deed of conveyance shown at pages 14 to 16 of the record. Clearly therefore, having sold the land to an individual, he could not lawfully sell it thereafter to the state. Hence, we submit that the tax sale to the state was absolutely void and appellant can claim no title from that source.

We come now to the sale to the individual. The act of 1878 directed very clearly the manner in which the lands should be sold. Section 30 of the act provides: "on the first Monday of March if the taxes shall remain unpaid and no sufficient personal property can be found on which to levy the same, the collector shall proceed to sell the said land, or so much and such parts of the land of each delinquent tax-payer as will pay the amount of taxes due by him and all costs and charges to the highest bidder for cash. He shall offer first the smallest legal sub-division which is hereby declared to be forty acres, and if the first parcel so offered does not produce the

amount due, then he shall add another similar sub-division and so on until the requisite amount is produced."

We contend that the tax collector's deed shows on its face that the officer selling the land did not follow or undertake to follow the provisions of this statute. The deed purports to follow the form provided by the statute, and contains a description of thirty-six hundred and twenty acres which he certifies that he sold to Chas. H. Delmas for the lump sum of twenty-one dollars and forty-nine cents, being the taxes due on said land. It is utterly impossible to tell from that paper what was the taxes due on each particular tract or for what part of the total purchase price each tract sold. No testimony was taken as to the manner in which the sale was conducted, and the tax collector's deed introduced into evidence is the only proof on the manner in which the sale was made. As pointed out in the statement of facts in this brief, the land was assessed in thirty-six different parcels as shown by pages 61 to 84 of this record. Appellant offered no proof that the sale was valid other than the tax collector's deed, and he must stand or fall by that. The deed recites in effect that the foregoing land, namely, thirty-six hundred and twenty acres were sold to Chas. H. Delmas for twenty-one dollars and forty-nine cents. We can only conclude from that statement that the entire body of land brought the amount named. It is of course impossible to say from the deed that he sold the several tracts separately and realized different amounts from them respectively. Fortunately, we do not have to speculate as to what the Mississippi supreme court would hold in a case of this character, for the reason that it has decided the precise question already. See case of *Morris* v. *Myer,* reported in 87 Miss. 701.

The case now at bar is as near like that recited by the supreme court as one could imagine, and we think must control here. *Higdon* v. *Salter,* reported in 76 Miss. 766.

These two decisions, we submit, are precisely decisive of the proposition involved in this case.

Counsel for appellant seems to rely on the statutory presumption of a tax deed that all was done that the law required to be done. He cites the case of *Bell* v. *Gordon,* 55 Miss. 45; *Green* v. *Williams,* 58 Miss. 759, and *Wheeler* v. *Lignon,* 62 Miss. 564. It is true indeed that under certain conditions a tax deed executed in regular form raises the presumption that the tax collector complied with the provisions of the statute in making the sale. However, this presumption does not apply in the case of a tax deed which shows on its face that the tax collector did not comply with the law. None of the authorities cited by counsel on that point, we submit, are in point.

In the case of *Gregory* v. *Brogan,* 74 Miss. 694, the court held: ''that a void sale is no sale and no conveyance can be supported by it, and the Code of 1880, section 525, will not bar a delinquent tax payer from setting up as a defense to the sale of his land a total departure from the provisions of the law governing and directing the assessment and sale of land for taxes.'' The court will observe that section 525 of the Code of 1880, is the same in effect as section 42, Laws of 1878, under which this sale was made.

The only question in this case is whether or not either or both of the tax sales made on the first day of March, 1880, were valid. We think it is manifest from the above that they were both void, and it follows that the claim of appellant against the forty-acre tract involved should have been cancelled and the title of appellee confirmed.

We submit that there is no error in the record, and that the case should be affirmed.

COOK, P. J., delivered the opinion of the court.

The appellee in this case exhibited her bill of complaint in the chancery court of Jackson county for the purpose of having certain deeds canceled as a cloud upon her

title to certain described lands, situated in said county. Omitting all save the facts essential to a proper determination of this appeal, it is only necessary to say that the defendant's claim of title to the lands in controversy depends upon the validity of a deed executed by the tax collector of Jackson county and a patent from the state to the same lands. It appears that in March, 1880, the lands in controversy were sold for the nonpayment of the taxes assessed against them both to the state of Mississippi and to an individual. The record shows that the lands were first struck off to the state, and then that they were struck off to an individual. By mesne conveyances defendant below became the purchaser of both titles, if any, resting on the tax sales.

The bill alleges that the deeds upon their face show that several hundreds of acres of land were offered and sold at one time, and that same were not offered in subdivisions of forty acres as required by law. As we construe the case made by this record, there are but two questions to decide. The complainant contended below, and contended here, that the deeds upon their face demonstrate that the lands were not first offered in forty-acre tracts, but that the several hundred acres of land were offered and sold *in solido* and for a lump sum. The further contention is made that, inasmuch as it appears from the list of lands struck off to the state that the lands were not sold to an individual, and inasmuch as the record· shows that the same lands were sold to an individual, the first destroys the last and the last destroys the first. In other words, it is contended that the presumption of the validity of the sale arising from the execution of the deed itself does not obtain here, because, by the act of the tax collector, he has thrown such doubt or suspicion upon his official acts that no presumption can be indulged in at all; and upon the face of the record, in the absence of further proof, it affirmatively and necessarily follows, that no valid sale of the lands was made.

Does the fact that the record shows the land was struck off to the state overcome the legal presumptions afforded by the statute? We quote from the statute as follows:

"All conveyances as hereinafter provided shall vest in the purchaser or the state, as the case may be, a perfect title to the land sold for taxes and no such conveyance or list as between the original parties, or subsequent alienees, shall be invalidated, nor shall any defense offered against the title thus conveyed in any court in this state, except by proof that the taxes for which said land was sold had been paid or tendered to the proper officer before sale, or that the taxes were illegal in part, and that before the sale the taxpayer tendered to the proper officers the amount of legal taxes due on said land."

The deed to the purchaser in this case, we think, conclusively establishes that there was a bidder; that the money was paid to the collector and the deed executed. With this predicate, it necessarily follows that the deed to the state was a nullity.

Whenever there is a legal bidder the collector must make title to him, and in that case any sale to the state was void. The bidder would have a right to the deed, and the collector could not deny or limit that right by a conveyance to the state.

The sale to the individual, as proven by the collector's deed, being valid, and the deed to the state being invalid by the same evidence, we think the appellant was the owner of the land, unless it appears that the land was not offered for sale and sold in accordance with the terms of the statute. The deed recites a legal sale, and without proof to the contrary, it will be presumed that the deed recites the facts. There was no such proof, and we therefore hold that the chancellor erred. *Lewis* v. *Griffin,* 103 Miss. 578, 60 So. 651.

*Reversed and remanded.*