STATE OF MARYLAND, For the Use of Robert W. Carter,

*vs.*

J. ROY PHILLINGER et al.

*Bill of Exceptions—Signing—Judge Beyond Seas—Automobile Accident—Injury to Passenger—Contributory Negligence—Evidence—Declarations by Employee.*

Absence of the trial judge "beyond seas" is "other disability" within the meaning of Acts 1922, ch. 418, providing that, in case such judge is unable, by reason of "death, sickness, or other disability," to sign the bill of exceptions, it may be signed by his successor or any other judge of the court. pp. 368-371

The appellant was not guilty of laches because he failed to submit the exceptions to the trial judge before he went beyond seas, this being before the end of the time allowed by law for such purpose. p. 371

In an action on account of the death of plaintiff's son while riding in defendant's automobile, it was proper to instruct the jury that plaintiff could not recover by reason of the excessive speed of the automobile, if the son did not protest against such speed, and by his failure to protest acquiesced in such speed, and such speed was the proximate cause of the accident. pp. 371-375

In an action on account of the death of plaintiff's son, while being driven in defendant's automobile by the latter's chauffeur, an instruction that plaintiff had the burden of proving that the son's death was caused by the negligence of defendant or his employee, while acting within the scope of his employment, was not defective because it failed to explain what was meant by "the scope of his employment." p. 376

In an action against the owner of an automobile for the death of a passenger therein by reason of the chauffeur's negligence, a witness having testified that defendant told her that he had sent the chauffeur to get a Christmas tree, and that he could get somebody to help him, *held* that statements made by the chauf-

feur, out of defendant's presence, that he was, at the time of the accident, going after the tree for defendant, and that, as defendant's agent, he induced deceased to accompany him, were admissible as against defendant.　　　　　　　　　　p. 376

In an action against the owner of an automobile and his chauffeur, on account of the death of a passenger in the automobile, a verdict for both defendants involved a finding either that the chauffeur's negligence did not cause the accident, or that the passenger was guilty of contributory negligence, and rendered immaterial the exclusion of evidence that the chauffeur, in inducing deceased to accompany him, acted as the agent of the owner.　　　　　　　　　　p. 377

In an action for the death of plaintiff's son, who helped plaintiff in the automobile business, plaintiff having testified as to his familiarity with wages paid persons employed at automobile agencies and garages in the neighborhood, could properly be asked to give his opinion of the value of his son's services.　　　　　　　　　　p. 378

Where the verdict, in an action for wrongful death, was in favor of both defendants, the admission or exclusion of evidence relating exclusively to the extent of plaintiff's pecuniary loss by such death is immaterial.　　　　　　　　　　p. 378

That a witness, who testified under a commission, stated that she was not able to go to court to testify, did not justify the admission of evidence that she had said that she "would never come alive" to court.　　　　　　　　　　p. 379

A witness having testified as to a conversation between her and one of defendants, it was proper to allow the latter to give his version of the conversation.　　　　　　　　　　p. 379

*Decided January 11th, 1923.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by the State of Maryland, for the use of Robert W. Carter, against J. Roy Phillinger and George W. Mowen, to recover on account of the death of plaintiff's son, Harry C.

Carter.   From a judgment for defendants, plaintiff appeals.
Affirmed.

The cause was argued before BOYD, C. J., THOMAS, URNER,
ADKINS, and OFFUTT, JJ.

*Edward M. Hammond,* with whom were *Guy W. Steele*
and *Joseph L. Donovan* on the brief, for the appellant.

*R. Lee Slingluff* and *Frederick J. Singley,* with whom
were *Thomas Foley Hisky* and *Janney, Stuart & Ober* on the
brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.
George W. Mowen, a resident of Baltimore City, on De-
cember 21st, 1915, owned an automobile and employed J.
Roy Phillinger, a chauffeur, to operate it.   On that day Phil-
linger, with his employer's permission, took the car for the
purpose of getting a Christmas tree.   On his way he called at
the house of his mother, where he met Mrs. Retta S. Carter,
his sister, and her son, Harry C. Carter, then nineteen years
of age.   Mrs. Carter lived at Sykesville and had earlier in the
day come to her mother's home in an automobile driven by
her son, Harry.   While Phillinger was at his mother's home
it was arranged that Harry C. Carter, his nephew, should
join him on the trip for the Christmas tree, after he had
driven some members of his family in their car "down town."
Carter accordingly drove his car to the corner of Howard
and Saratoga streets, where he left it and got in the automo-
bile driven by Phillinger, who had followed him.   They then
went to the home of Mr. William M. Gill, Phillinger's
father-in-law, with whom he boarded, and he too joined Phil-
linger on his expedition.   The three then got in the Mowen
car and proceeded out the Frederick Road by way of Ellicott
City.   They stopped in Ellicott City for a short time and,
when they left, Phillinger was on the front seat driving, and
Carter and Gill on the rear seat, Carter being directly behind

Phillinger. When they reached a point on the Frederick Road near the Seventen Mile House, about seven miles west of Ellicott City, the left rear wheel of the automobile collapsed, the car overturned and its three occupants were thrown out. Phillinger and Gill apparently were not seriously hurt, but Carter was almost instantly killed.

On the 19th of the following August Robert W. Carter, the equitable plaintiff, filed his declaration in the Baltimore City Court against Phillinger and his employer, George W. Mowen, in which he charged that the accident was caused by the reckless, dangerous and unlawful speed at which it was driven by Phillinger, who was at the time the employee and chauffeur of the defendant Mowen, and that Harry C. Carter, the son of the equitable plaintiff, entered the automobile at Phillinger's request. The case came on in due course for trial and the verdict and judgment being against the plaintiff, the present appeal was taken.

The record contains twenty-four exceptions, all of which, with the exception of the twenty-fourth, relate to rulings upon questions of evidence.

The case was tried in the Baltimore City Court before the HONORABLE WALTER I. DAWKINS, the judge of that court, but these exceptions were signed by the HONORABLE CARROLL T. BOND, under the circumstances set forth in the following statement, which is certified in connection with the exceptions:

"The following exceptions are signed by the Honorable Carroll T. Bond, Judge of the Baltimore City Court, at the request of the appellant (leaving to the decision of the Court of Appeals the question of the propriety of his doing so under the Act of 1922, chapter 418), the Honorable Walter I. Dawkins, the judge of said court before whom such case was tried being beyond the seas and unable by reason thereof to sign the exceptions allowed by him in the trial of said case, within the time limited by law, the evidence at said trial being taken down by the court stenographer in

notes and by him transcribed, the Honorable Carroll
T. Bond being satisfied, by agreement of counsel, that
the bills of exceptions hereinafter allowed are true bills
of exceptions as allowed by the Honorable Walter I.
Dawkins during the trial of said cause, as follows:"

When the case reached this Court, J. Roy Phillinger, one
of the appellees, moved to dismiss the appeal on the following
grounds:

"(1) Because the bill of exceptions contained in the
record was not signed by the Honorable Walter I.
Dawkins, Judge of the Baltimore City Court, before
whom said case was tried and by whom said exceptions
were allowed.

"(2) Because the Honorable Carroll T. Bond, an
Associate Judge of the Supreme Bench of Baltimore
City, who signed the plaintiff's bill of exceptions, con-
tained in the record, took no part in the trial of said
case, and had no right, warrant or authority under the
laws of the State of Maryland to sign said bill of
exceptions.

"(3) Because the provisions of chapter 418 of the
Acts of 1922 are not applicable to the facts of this case.

"(4) Because it does not appear that Judge Daw-
kins, before whom said case was tried, was by reason
of death, sickness or other disability or the expiration
of his term of office unable to sign said bill of excep-
tions."

This motion must be overruled. That part of chapter 418,
Acts of 1922, which is relevant to the question before us,
reads as follows:

"In case the judge before whom the cause has here-
tofore been or may hereafter be tried is, by reason of
death, sickness or other disability, or by reason of the
expiration of his term of office, unable to hear and pass
upon the motion for a new trial and allow and sign
said bill of exceptions, then the judge who succeeds
such trial judge, or any other judge of the court in

which the cause was tried, holding such court there-
after, if the evidence in such cause has been or is taken
in stenographic notes, or if the said judge is satisfied
by any other means that he can pass upon such motion
and allow a true bill of exceptions, shall pass upon
said motion and allow and sign such bill of exceptions;
and his ruling upon such motion and allowance and
signing of such bill of exceptions shall be as valid as
if such ruling and allowance and signing of such bills
of exceptions had been made by the judge before whom
such cause was tried."

The plain and obvious purpose of this statute was to meet
just such exigencies as the one with which the appellant in
this case was confronted when he undertook to perfect his
appeal.

As the law stood prior to the passage of that act, only the
judge or judges who presided at the trial could sign a bill
embodying an exception reserved to any ruling made in the
course of the trial. *State, use of Samuel,* v. *Weiskittel,* 61
Md. 48; *Gross* v. *Wood,* 117 Md. 362; *Preston* v. *McCann,*
77 Md. 30; 2 *Poe, Pl. & Pr.,* sec. 323; and if for any reason,
the judge or judges who presided were unable to sign the
exceptions, the appellant, although he may have been without
fault, lost his right of appeal and was without remedy, ex-
cept such as was afforded by a new trial with the attendant
delays and expenses. Notwithstanding the occasional hard-
ship incident to its operation, that rule was a wise and rea-
sonable precaution to insure an accurate record under the
conditions prevailing at the time it was adopted. Statute 13,
Edward I, upon which it rested, was adopted at a time when
often the only record of the evidence taken at the trial of
causes lay in the memories of the judge and the counsel and in
the notes taken by them. But under modern practice, where the
evidence is recorded as it is given in shorthand and accurately
transcribed, a record is made of the evidence and all pro-
ceedings in reference thereto, far more accurate and complete
than the memories of the presiding judge and the counsel in

the case, aided by such notes as they have taken, could have possibly furnished, and with the introduction of that practice the reason for the rule disappeared and the rule itself became an unreasonable anachronism. It was to remedy that condition that the statute in question was adopted, and being remedial in its character it should be liberally construed to give effect to the purpose and intent of the legislature. 25 *R. C. L.,* page 1077; *Ordway v. Cent. Nat. Bank,* 47 Md. 241.

Coming now to the facts and the statute before us, it appears that when the appellant desired to submit the exceptions in this case to the judge who tried it, for his signature, it was found that he was beyond the seas and could not possibly return to sign them within the time limited by law for transmitting the record. It was suggested that the appellant might have submitted them to him before he went beyond the seas, and that he was guilty of laches in not having done so, but a sufficient answer to that contention is found in the language of the Court in *Gross v. Wood, supra,* where it is said: "It is true that JUDGE SHARP could have signed it had it been presented to him between the 10th and 17th of January, but said appellee was not required to have it prepared by that time, and, so far as the evidence shows, he had no reason then to suppose that JUDGE SHARP would not be able to sign it later." And in our opinion he was not, at the peril of being charged with laches, bound to present the exceptions for the consideration of the court within any period of time less in duration than that limited by law for the purpose, and exceptions presented on the last day of the period possessed the same incidents and should be considered and treated in the same manner as if presented on the first day of the period. When the appellant presented his exceptions in the court where the case was tried, the judge who presided at the trial was beyond the seas, and was for that reason unable to sign them. The question, therefore, is whether his absence came within the phrase "other disability." "Other disability" is used in apposition with "death" and "sickness."

and was manifestly used to describe a situation in which, owing to his absence or physical disability, the presiding judge could not sign the exceptions which he had allowed. Absence beyond the seas was a "disability" just as absence as a result of illness was a "disability," and when it was said that Judge Dawkins was not able to sign the exceptions because he was beyond the seas, it was equivalent to saying that he could not sign them because of a disability "other" than death or sickness. Any other construction would be over technical and strained. What the act sought to do was to provide for the signing of bills of exceptions by another judge, where for any reason the judge who tried the case could not sign them. There is no possible reason why a litigant should lose his right to his exceptions in the event that the judge before whom his case was tried resigned or went beyond the seas, but should retain it if the judge died or became ill, and the Legislature could have intended no such absurd result.

The plaintiff offered one prayer, which stated the measure of damages applicable to the case, which was granted. Phillinger offered twelve prayers, of which the court granted the third, fourth, fifth, sixth, ninth and tenth and refused the others. Mowen offered seven prayers of which only the second, fourth, fifth, sixth and seventh were granted. No objection was urged in this Court to the granting of the third, fourth, fifth, sixth and tenth prayers offered by Phillinger, and the second, fourth, sixth and seventh prayers offered by Mowen, and as to those prayers it is sufficient to say that we have discovered no error in the rulings as to them. It remains therefore for us to consider Phillinger's ninth and Mowen's fifth prayers, and it is against these instructions that the attack of the appellant is directed.

By Phillinger's ninth prayer the jury were instructed: "Even though they find from the evidence that this defendant was driving the automibile mentioned in the evidence at an excessive rate of speed just before and at the time of the happening of the accident mentioned in the evidence, yet, if

they further find that the deceased, Harry Carter, was riding in said automobile, while it was being so driven, and did not object to or protest against the rate of speed at which said automobile was being driven and the jury find that by his failure to so object or protest he acquiesced in the speed at which said automobile was being driven, and the jury further find that the excessive rate of speed at which said automobile was being driven just before and at the time of the accident was the proximate cause of the death of the said Harry Carter, that then the said Harry Carter was guilty of negligence which directly contributed to his own death and the plaintiff in this case is not entitled to recover and the verdict must be for this defendant." This prayer, it seems to us, fairly and correctly defines the relative rights, duties and responsibilities of a passenger in an automobile and the driver whose negligent operation thereof results in injury to the passenger. It would be unreasonable, we think, to hold that a passenger in an automobile, who knew that it was being driven at a speed so excessive as to endanger the lives of persons in the lawful use of the public highways of the State as well as the occupants of the machine, and who so far acquiesced in, approved, and participated in the conduct of the driver, that he made no protest or objection to it when he could, if he had wished to have done so, was not himself guilty of negligence directly contributing to the injury complained of. If he knew that the speed at which the car was being driven was so great as to imperil the lives and safety of its occupants, it was his plain duty to have warned the driver and to have protested against the speed of the machine, and if he failed to perform that duty when it was within his power to perform it, and the accident which he knew might happen actually did happen, then he at least could not then for the first time complain of the driver's negligence. These principles are eminently just and reasonable and harmonize with the common experience and conduct of men, and are abundantly supported by authority.

In dealing with similar facts in *Sharp* v. *Sproat,* 208 Pac. 613, the Supreme Court of Kansas said: "Whether a warning protest or request would have been heeded by the defendant is questioned, but whatever the effect would have been, as the danger was obvious, it was the duty of Sharp at least to remonstrate against the dangerous speed, or insist that he be allowed to leave the car, if there was time to do so after the danger became apparent. In *White* v. *Portland Gas & Coke Co.,* 84 Or. 643, 165 Pac. 1005, the Court, while stating that a rule applying to every case of this kind could not be laid down, said: 'It is plain, however that an invited guest is not to be supine and inert as mere freight. Accepting the hospitality of his friend does not excuse him from the duty of acting for his own safety as a reasonably prudent person would under like conditions.'

"The same rule was declared in *Atwood* v. *Utah L. & R. Co.,* 44 Utah, 374, as follows: 'Of course every one who may be riding in a vehicle, whether as passenger, invitee, or otherwise, must always exercise ordinary care and prudence to avoid injury to himself, and to that end, in case of imminent danger, must leave the vehicle in case such a course is practical and necessary to avoid injury. Again he may not sit silently by and permit the driver of the vehicle to encounter or enter into open danger without protest or remonstrance and take the chances, and, if injured, seek to recover damages from the driver of the vehicle or from the one whose negligence concurred with that of the driver's, or from both.'

"A like view was taken in *Hardie* v. *Barrett,* 257 Pa. St. 46, L. R. A. 1917 F, 444, where the Court remarked: 'The rule is well established that, when possible dangers, arising out of the negligent operation of a hired vehicle or a conveyance in which one is riding as an invited guest, are manifest to a passenger, who has any adequate opportunity to control the situation, if he sits by without protest and permits himself to be driven on to his injury, this is negligence which will bar recovery.' "

And to the same effect are *Minnich* v. *Easton Transit Co.,*
267 Pa. St. 200; *Berry, Automobiles,* secs. 500, 502, 508,
520; *Cent. L. J.,* vol. 95, page 380; *Farmers Bank & T. Co.*
v. *Henderson,* L. R. A. 1918 C, 646.

The legal principles involved in this proposition, although
not applied to precisely similar facts, have nevertheless been
frequently stated by this Court in relation to analogous facts.
One of the more recent cases is *Dorchester County* v. *Wright,*
138 Md. 580, in which JUDGE URNER, speaking for the Court,
said: "But independent of the question as to the driver's
failure to exercise due care is the issue as to whether the
appellee was also negligent in not observing the danger and
endeavoring to avoid injury by timely advice and warning
to the driver. It was his individual duty to use ordinary
care for his safety, and if he failed in the performance of that
duty, he cannot recover for an injury to which his own negli-
gence thus contributed."

Of the cases relied upon by the appellant as supporting a
contrary theory, few are really in point. Most of them do
not involve the question of contributory negligence, but turn
upon the question of imputed negligence in actions brought
against third persons for injuries occasioned by the com-
bined negligence of the driver of an automobile in which the
plaintiff was a passenger, and the agents or servants of a
third person, and where by way of defence the defendant
attempted to impute the negligence of the driver of the auto-
mobile to his passenger, the plaintiff. But since "imputed"
negligence is the negligence of another which is imputed to
a person sought to be charged because of the relation in which
he stood to such person, and as contributory negligence is
the failure of the person sought to be charged, to himself
discharge some duty or do some act necessary to his safety, it
is apparent that cases dealing with imputed negligence do
not exemplify the application of the doctrine of contributory
negligence. There may be cases which do hold that no matter
what may be the conduct of the driver of an automobile, and
however it may imperil its occupants, a passenger therein is

under no duty to protest against such conduct, but we do not, for reasons already given, feel that such cases correctly state or apply the law of contributory negligence.

The fifth prayer of the defendant Mowen reads as follows: "The court instructs the jury that they are to consider all the evidence and circumstances in this case, and after considering all the evidence and circumstances, the burden of proof is upon the plaintiff to show by weight of the evidence that the death of the plaintiff's son was caused by negligence of the defendant Mowen or of his employee, while acting within the scope of his employment, and unless the jury shall find it has been shown by the weight of the evidence that the death of the plaintiff's son was caused by the negligence of the defendant Mowen or his employee, while acting within the scope of his employment, their verdict must be for this defendant (Mowen)."

This prayer, the appellant contends, is bad because it did not explain to the jury what was meant by the phrase "the scope of his employment." But that objection seems tenuous and unsubstantial. The technical, legal and the literary meanings of the phrase are practically identical, and since the legal proposition embodied in the prayer was undoubtedly sound, in our opinion, it was properly granted.

This brings us to the rulings on the evidence. The first, fifth, twentieth, twenty-second and twenty-third exceptions were abandoned. The second, third, fourth, seventh, eighth and ninth exceptions are based upon the court's action in refusing to permit the jury to consider any statements made by Phillinger out of the presence of Mowen as in any way affecting Mowen. In view of the testimony of Mrs. Carter, that Mr. Mowen had told her that "he sent Roy after the Christmas tree for his niece, I think it was, and as for Harry going with Roy he knew nothing about that. He told Roy he could get somebody to help him, or pick up somebody—I don't know whether he said get somebody or pick up somebody, it was one or the other," and that the statements were made by Phillinger whilst he was engaged in carrying

out the directions of his employers, this testimony should have been admitted without qualification. *Jones, Evidence,* sec. 255, *et seq.* But it is not apparent how the appellant could have been injured by its exclusion. The only effect which these statements could have had would have been to show that Phillinger, in inviting Harry C. Carter to accompany him on his errand, was acting as the agent of Mowen. But if it had been conceded that Phillinger was acting as Mowen's agent in inviting the deceased to accompany him, Mowen, who was not present, could only have been held responsible for the result of the accident on the ground that his employee Phillinger had been negligent. Phillinger's negligence was an indispensable element of the plaintiff's right to recover, either against him or his employer. And when the jury found their verdict for both defendants, they necessarily found either that Phillinger's negligence did not cause the accident, or if it did, that the negligence of the deceased so far contributed to the happening of the accident that no right of action for the consequences thereof could inure to the plaintiff in this case, and in either event it was wholly immaterial whether Phillinger, in inducing the deceased to accompany him, acted as the agent of Mowen or not.

In the course of the cross-examination, Mrs. Carter, the mother of the deceased, was asked whether the suit was brought or prosecuted with her approval and she answered that she had "nothing to say about that." The court overruled an objection to that question and that ruling is the subject of the sixth exception. While the relevancy of the question is not apparent, we do not see how the appellant could have possibly been injured by that ruling, in view of the negative quality of the answer.

Robert W. Carter, the equitable plaintiff, testified that in 1915 he conducted a store business and also sold automobiles, and that his son, Harry, assisted him in the automobile business; that he was his "right hand" man, called for and got the automobiles and sold them, and that after his son's death he had to quit the automobile business because he had no

other son old enough to get a license and he could not handle it himself. That his son was an automobile mechanic and "could do anything" about automobiles, that he paid him no wages, but he got "what money he wanted and things." He was then asked a series of questions designed to show the receipts, commissions and profits from his automobile business, and upon objection the court refused to allow these questions to be asked. These rulings are the subject of the eleventh, fourteenth, fifteenth, sixteenth, seventeenth and eighteenth exceptions.

Robert W. Carter, the appellant, having testified that he was familiar with the wages paid to mechanics employed at, and persons in charge of, automobile agencies and garages in his neighborhood, was asked to give his opinion of the value of his son's services. He was then asked what was the fair market value of the services of a man who rendered services similar to those rendered by his son. The court refused to allow these questions and these rulings are the subject of the twelfth and thirteenth exceptions. We find no reversible error in the rulings involved in the exceptions relating to the profits and income of the automobile business, for while those facts may have had some slight significance in measuring the value of the services of the deceased in managing the business, by showing its size, the plaintiff was not injured by them because other testimony admitted in evidence showed when the business was started, the number of machines sold, and the kind or make of automobiles which he handled. Nor do we find any reversible error in the rulings involved in the twelfth and thirteenth exceptions because, for while the question involved in the twelfth exception was proper and should have been allowed (*Wallace* v. *Schraub,* 81 Md. 598; *Doyle* v. *Gibson,* 119 Md. 39), nevertheless the same witness was later permitted to and did state without contradiction what other persons were paid for services similar to those rendered by his son, and what others were willing to pay his son, and Albert M. Musgrove also, without contradiction, gave his opinion, at the plaintiff's request, of the value of the services

rendered the equitable plaintiff by the deceased. But there
is another reason why the equitable plaintiff could not have
been injured by these rulings. They all related to the amount
of damages which he was entitled to recover if the jury found
their verdict for the plaintiff. But as they found their ver-
dict for the defendants, the admission or exclusion of evi-
dence relating exclusively to the extent of the pecuniary loss
which he sustained through the death of his son, and which
did not affect his right to recover, could not have injured him,
because if the defendants were not culpable, and if he was not
entitled to recover at all, the extent of his loss became imma-
terial. *Amer. Syrup Co.* v. *Robert,* 112 Md. 21.

Mrs. Retta S. Carter was physically unable to attend the
trial and her testimony was taken under a commission. In
the course of her cross-examination she was asked if she had
not stated that she would not go to court to testify in the
case, and she replied that she had, because she was not able
to go. Mrs. Georgianna Phillinger, a witness for the de-
fendants, was asked if Mrs. Carter had made such a state-
ment, and being required over objection to answer, she replied
that she had said she "never would come alive." This ruling
is the subject of the twenty-first exception. The question and
the answer were wholly immaterial, improper and innocuous.
Mrs. Carter in her examination testified to a conversation
between her and the defendant Mowen. Mowen, testifying
for the defendants, was allowed, over the plaintiff's objection,
to give his version of that conversation. In those rulings,
which are the subject of the twenty-second and twenty-third
exceptions, we find no error. *Jones, Evidence,* par. 293;
*Smith* v. *Wood,* 31 Md. 293.

Since a careful examination of the record in this case dis-
closes no error which would justify us in reversing the judg-
ment appealed from, it must be affirmed.

*Judgment affirmed, with costs to the appellees.*