# GEO. P. FITZWATER et al. v. YOUGHIOGHENY HYDRO-ELECTRIC CORPORATION.

*Closing of Highway—Who May Petition—Corporation as Citi-
zen of County—Special Proceedings—Showing as
to Jurisdictional Facts.*

Where the county commissioners, in ordering the closing of
portions of a road, under Code, art. 25, sec. 142, *et seq.,* stipu-
lated that the petitioner for the closing should construct substi-
tute ways, the agreement to that effect was properly attached

by the commissioners to the order, and formed a part of the record as transmitted to the circuit court for review, with the result that any fact shown in the agreement was shown on the record.                                    p. 464

Since the place of residence of a corporation is the place where its principal office is located or where its principal operations are carried on, a Maryland corporation, developing water power in a particular county in order to generate electricity, is to be regarded as a resident of that county.                    p. 465

What the word "citizen" comprehends in a particular statute must be sought in the underlying purpose and intent, which are to be found by ascertaining the nature of the private interests to be affected, and for which it may be assumed that the Legislature intended to provide, and the nature of the public interest which it may be assumed that the Legislature intended to protect and promote.                         pp. 468, 469

A corporation is a citizen of the county of which it is a resident, within the meaning of Code, art. 25, sec. 143, authorizing "any citizen of any county" to petition the county commissioners for opening, altering, or closing any road.    pp. 465-469

The rule which requires all facts essential to the valid exercise of a special limited jurisdiction to appear on the face of the proceedings is not a rule of pleading or one concerned with particular documents, at particular stages of the proceedings, but it merely requires that somewhere in the record the courts shall find assurance that the action taken was in a proceeding in which such action was authorized by law.                    p. 470

That, in a proceeding before the county commissioners for the closing of a road, the petition was not properly signed until hearing, did not affect the validity of the order thereon for the purpose of its review by the courts.                    p. 470

*Decided January 13th, 1926.*

Appeal from the Circuit Court for Garrett County (DOUB, J.).

Petition by the Youghiogheny Hydro-Electric Corporation to the County Commissioners of Garrett County for the

closing of a road, to which George P. Fitzwater filed counter petitions. From an order of the circuit court, on appeal from the commissioners, overruling motions to quash the proceedings and in arrest of judgment, and ordering the road closed, said Fitzwater and others appeal. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and WALSH, JJ.

*Saul Praeger,* with whom were *Asa T. Matthews* and *Playford A. Naylor* on the brief, for the appellants.

*Jesse N. Bowen* and *D. Lindley Sloan,* with whom was · *Fred A. Thayer* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellants contend that an order of the Circuit Court of Garrett County, closing two portions of a road in that county, under the provisions of article 25, sections 142, *et seq.,* of the Code of Public General Laws, is invalid because, in the original proceedings before the county commissioners, it was not made to appear that the persons who gave the public notice, and filed the originating petition, were citizens of the county. Section 143 of article 25 provides that, "whenever any citizen of any county intends to petition the county commissioners for opening, altering or closing any road, he shall give thirty days' notice thereof in one or more of the newspapers published in the county." And taking the effect of this to be that the right of petitioning is restricted to citizens of the county, it is contended that a showing of citizenship on the record is essential to the validity of an order closing a road, under the rule that all facts essential to the valid exercise of a special, limited jurisdiction must be made to appear on the face of the proceedings. *Smith v. Goldsborough,* 80 Md. 49, 59; *Cumberland Valley R. Co. v. Martin,* 100 Md. 165, 166.

The Youghiogheny Hydro-Electric Corporation, incorporated under the laws of this State, is developing the water

power of the Youghiogheny River and its tributaries in Garrett County, to generate electricity for public use; and as the impounded water would flood portions of several roads, including the one in question, notice was given by the corporation of intention to make application for the closing of all the roads to be flooded, and, in due course, a petition was prepared and filed with the county commissioners. The notice was signed "Youghiogheny Hydro-Electric Corporation, a Maryland corporation," and the petition was signed by twelve individuals, and in the name of the corporation; but neither the notice nor the petition contained any statement of citizenship. Counter petitions were filed by the appellants and, after a hearing, the county commissioners ordered the road closed as prayed, and executed an agreement with the Youghiogheny Corporation, which required the company to construct substitute ways. At the hearing, to meet an objection to the signature of the corporation, F. R. Corliss, an agent, added to the corporate signature on the petition: "By F. R. Corliss, Agent." On appeal to the circuit court, the appellants filed a motion to quash the proceedings, and after a verdict of a jury for the closing of the road, filed a motion in arrest of judgment. The court overruled both motions and finally ordered the parts of the road in question closed. The appeal is grounded on error in the overruling of the motions. Both motions raise the one question of jurisdiction already stated.

The county commissioners attached to the record of their proceedings, and transmitted to the circuit court, the agreement executed by themselves and by the corporation. It recites the whole proceeding, and declares that, in consideration of the closing of the portions of the various roads, the corporation agrees with the county commissioners to construct the substitute ways as specified. The agreement and the order seem clearly to form one transaction, each essential to the other, and inseparable from the other; and the agreement, in our opinion, was properly attached to the order, and formed a proper part of the record of the pro-

ceeding. And any facts shown in the agreement would be shown on the record of the proceeding. It recites that the corporation is formed under the laws of Maryland, and is engaged in the work of constructing the dam in Garrett County to impound water for development of electric energy for public use, that it has purchased several thousand acres of land for impounding the water, and that for the same purpose it is necessary to close specified portions of county roads. In *Baltimore and York Turnpike Co. v. Crowther,* 63 Md. 558, 572, 573, this Court held it to be a general rule of law that the place of residence of a corporation is the place where its principal office is located or where its principal operations are carried on. And, under that rule, the present corporation would, on the face of the record of the proceedings, as they came from the county commissioners— to go no further, now—appear to be a resident of the county where it gave its notice and filed its petition. The statute, however, refers to a petition, not by a "resident," but by a "citizen" of the county. The appellee assumes "resident" and "citizen" to be synonymous, within the meaning and purpose of the statute, and the appellants deny that they are so, and deny that a corporation can be included under the word "citizen."

The mere use of the word cannot be taken as determinative, because the word has more than one meaning. "The word 'citizen' has various meanings," said this Court in *Risewick v. Davis,* 19 Md. 82, 93, "viz: 'A native of a city, an inhabitant who enjoys the freedom and privileges of the city in which he resides, an inhabitant, a dweller in any city, town or place; a person native or naturalized, who enjoys the privilege of exercising the elective franchise.' * * * In which of these senses the word was used in the Act of 1795, ch. 56, (the attachment law), does not appear from the cases above referred to. If the object of the law was, as some of the earlier cases indicate, an amelioration of the common-law process, or the protection of our own citizens from summary process, as well as to give them a remedy

against debtors residing out of the process of the court, as-
others declare, the largest interpretation of the word would
be most consonant to reason and justice * * * hence citi-
zen would be synonymous with 'inhabitant or permanent
resident' in a city or county, as all such are alike entitled
to the most enlarged remedial process, and protection from
summary proceedings, equally, with native or adopted citi-
zens, enjoying the elective franchise, and the right of pur-
chasing and holding real estate. This construction does not
conflict with the provisions of Act 1715, ch. 40, but gives a
cumulative remedy adapted to the exigencies of trade and
commerce which would otherwise be much embarrassed by
the delays of the law." It was therefore held that in the
restriction of the right of attachment to citizens of this state·
or of some other state, the word "citizen" included inhab-
itants or permanent residents. And in *Field v. Adreon,* 7
Md. 209, 213, the Court held that an unnaturalized Irish-
man, residing in Baltimore City, was a "citizen" within the
meaning of a provision for attachments of the property of
citizens absconding. "It certainly never could have been
the intention of our Legislature," said the Court, "to have
made such an invidious distinction in favor of *foreign citi-
zens* residing in our State, over our own resident citizens,.
as to exempt the former from being proceeded against as,
absconding debtors, while the latter were to be held subject
to all the penalties of the attachment laws against debtors.
absconding to evade their creditors. * * * A party may not
be a citizen for political purposes, and yet be a citizen for
commercial or business purposes." *State v. Trustees,* 11
Ohio, 24, 27; *McKenzie v. Murphy,* 24 Ark. 155, 159;.
*Bacon v. Board of State Tax Commrs.,* 126 Mich. 22.

The word is found used in many clauses, statutory and
constitutional, especially those of earlier years, which have
established general rights and obligations. For instance,
the clause in the Bill of Rights of Maryland concerning lib-
erty of the press (article 40) provides, "that every citizen
of the State ought to be allowed to speak, write and publish

his sentiments on all subjects, being responsible for the abuse of that privilege." The Compact of 1785 between Virginia and Maryland, with which the Court has had to deal in another case at this term, secures to "citizens" of the two states rights in the ownership of property on the shores of the Potomac River. Articles in the Code pertaining to rights in ferries and fisheries provide, in words, for "citizens," "residents," or "inhabitants." Article 37, section 1; article 39, section 19; article 72, section 111; article 92, section 4. The Court has never been called upon to construe the words in any of these clauses. But the expression in the Bill of Rights, which, taken alone, is even more restrictive, "that no *man* ought to be taken or imprisoned or disseized * * * or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the Land," has been treated as including corporations. *Regents of Univ. of Md. v. Williams,* 9 G. & J. 365, 412. And the same breadth has been given it in other provisions. *Laurel Canning Company v. Baltimore & Ohio Railroad Company,* 115 Md. 638, 642. Chancellor Bland, in *Cape Sable Company's Case,* 3 Bland, 606, 656, held that corporations came within the spirit, if not the letter, of a statute (Acts, 1801, ch. 74, sec. 11), which prohibited the arrest of "any inhabitant out of the county where he or she doth reside." On the other hand, there are references to citizens or individuals which obviously cannot be construed to include corporations. Such are those in the constitutional provisions regarding the holding of public offices, (article 35 of the Bill of Rights), religious freedom (article 36), and the elective franchise (article 1 of the Constitution).

Corporations organized under the laws of the several states have been held to be included within the phrase "citizens of the United States," in an Act of Congress concerning claims arising from Indian depredations, and within "citizens of the United States and those who have declared their intention to become such," in a statute giving a right to purchase mineral deposits in the public lands. The Balti-

more Insurance Company was included in the benefits provided by the French Spoliation Act of January 20, 1885, for "citizens of the United States or their legal representatives." And the same comprehensive effect has been given to similar expressions in treaties. *United States v. Northwestern Express Co.,* 164 U. S. 686, 688. *Ramsey v. Tacoma Land Co.,* 196 U. S. 360.

In *State v. Trustees,* 11 Ohio, 24, it was held that, as used in an act relating to the acquisition of public lands by religious societies, requiring such societies to furnish a list of the names of their members, specifying that they were citizens of the particular township, the word "citizen" was synonymous with resident. "It can hardly be believed," said the court, "that the Legislature, in using the word 'citizen,' in this statute, intended to make a distinction between native or naturalized citizens, and resident aliens. Why should such a distinction be made? Is there not as much need of religious instruction in the one case as the other?" And in *McKenzie v. Murphy, supra,* a statutory reservation of a homestead exemption to "every free white citizen of this state, male or female, being a householder or head of a family," was held to include aliens domiciled in the state. In *Attorney-General v. Police Commissioners,* 30 R. I. 212, a statute providing for liquor licenses to "citizens resident within this state," was held, because of the legislative construction, to include corporations which the General Assembly had created for the express purpose of engaging in the liquor business. On the other hand, the word "citizen," in a statute denoting the persons who might sign petitions for change in school district boundaries, was held to mean an elector. *School Dist. No.* 11 *v. School Dist. No.* 20, 63 Ark. 543. And another requiring that fifteen *bona fide* citizens sign a petition to initiate a proceeding to compel railroads to make connections, was held to exclude corporations. *St. Louis & S. F. R. Co. v. State,* 120 Ark. 182.

What the word comprehends in particular statutes must be sought, then, in the purpose and intent underlying each.

"These considerations," said Mr. Justice White, in *United States v. Northwestern Express Co., supra,* "give rise to an ambiguity which we must solve, not by reference to a mere abstract technicality, but by that cardinal rule which commands that we seek out and apply the evident purpose intended to be accomplished by the law-making power." And this purpose must be found by ascertaining the nature of the private interests to be affected, and for which it may be assumed the Legislature intended to provide, and the nature of the public interest which it may be assumed the Legislature intended to protect and promote.

The opening or closing of a road would seem to be a matter affecting all residents of the county alike, all those, that is, who may be entitled to have their convenience considered and promoted by the local government, and appears to have no especial relation to the political rights of individuals in the county. Outside of political rights, corporations in the county stand on substantially the same footing as individuals. They own property, pay taxes, and share proportionately in all the burdens of government; engage in the business activities of the county, and are entitled to have their convenience given equal consideration. From the side of the private interests to be affected, there would seem, then, to be no reason for excluding corporations from making the application to the county commissioners, and inaugurating the proceeding in which the wisdom and propriety of opening or closing a road is to be determined. And there would seem to be no public interest to require it. To construe it that way would be to suppose that in this day of widespread use of the corporate form of organization, notwithstanding the general equality of corporations in respect to rights not political, if the land to be affected is owned by corporations, or if the activities to be served, however beneficial they may be to the people of the county, are to be conducted by corporations, the county commissioners are not to receive applications in the corporate name. Practically, it would be to suppose that the Legislature intended, in such cases, to insist upon application under the borrowed names of indi-

viduals. And it seems to us unreasonable to suppose that the Legislature meant to require such a profitless formality.

Our opinion is that the purpose and intention of the Legislature is not to be so narrowly construed, and that the Youghiogheny Corporation was, on the record before the county commissioners, entitled to make, in its own name, the application on which the commissioners proceeded. The delay in adding the name of the agent signing, so far as that may have been necessary, was immaterial. The rule which requires the jurisdictional facts to appear is not a rule of pleading or one concerned with particular documents, at particular stages of the proceedings; the requirement is merely that somewhere in the record the courts shall find assurance that the action taken was in a proceeding in which such action was authorized by law. *Smith v. Goldsborough, supra; Cumberland Valley Railroad Company v. Martin, supra.*

*Order affirmed, with costs to the appellee.*