## GEORGE G. YOUNG v. MAYOR AND CITY COUNCIL OF CUMBERLAND

[No. 31, April Term, 1936.]

*Decided June 9th, 1936.*

The cause was submitted on briefs to BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, J. J.

*Clarence Lippel* and *Matthew J. Mullaney*, for the appellant.

*Lewis M. Wilson* and *Charles Z. Heskett*, for the appellee.

BOND, C.J., delivered the opinion of the Court.

This suit, in equity, for specific performance of a contract to buy real estate, was brought to test the title to a lot of ground in Cumberland, bought by the city at a sale for county and state taxes and sold to the appellant. The case was submitted on bill and answer and an agreed statement of facts. The court held the title good and granted the relief; and the defendant appeals. The questions argued are whether the city had power to purchase real estate at a sale for state and county taxes, and whether the notice of sale required by the statutes had been given.

A former owner, James L. Poling, on April 12th, 1924, conveyed the property to Jacob E. Poling, of West Virginia, and Milton W. Wonn, of Cumberland, as trustees for the benefit of the creditors of James L. Poling. His wife did not join in the deed, and her interest on survival therefore did not pass with it. James L. Poling died on April 30th, 1924, leaving a widow and children, none of whom are parties to the cause. The Circuit Court assumed jurisdiction of the trust. State and county taxes for the years 1927, 1928, 1929, and 1930 being unpaid, the tax collector proceeded to sell the property, procuring leave of the court having jurisdiction of the trust, advertising the sale, and leaving a copy of the tax bills with Mr. Wonn, a trustee. The advertisement was in-

serted in a newspaper once, on May 14th, 1932, and the sale to the Mayor and City Council of Cumberland took place on June 3rd, 1932, and was duly ratified by the Circuit Court. The purchase price was $1,880. On April 21st, 1934, the Mayor and City Council sold the property to the appellant, George G. Young, for $2,400. Upon the advice of counsel, Mr. Young questioned the title, and the present bill was accordingly filed.

On the question of power in the city to buy at a tax collector's sale for delinquent state and county taxes, the city cites a general provision in its charter empowering it to "purchase and hold real * * * property or dispose of the same for the benefit of said city; provided, that the purchase or alienation of such real estate, when the value thereof shall exceed the sum of ten thousand dollars, shall be first submitted to the voters of the city." Code Pub. Loc. Laws, art. 1A, sec. 1. But it is denied that this provision is intended to authorize purchases at tax sales. This court seems never before to have had occasion to consider the question. In other jurisdictions, while there has been some difference of opinion, the greater number of decisions have held that, unless given it specifically by statute, a municipal corporation has no such power, that the general power to buy given by statutes similar to that quoted from the charter of Cumberland does not include it, and purchases without the more specific authority are void. *Knox v. Peterson,* 21 Wis. 247, 249; *Sprague v. Coenen,* 30 Wis. 209; *City of Champaign v. Harmon,* 98 Ill. 491; *O'Connell v. Sanford,* 256 Ill. 62, 99 N. E. 885; *City of Logansport v. Humphrey,* 84 Ind. 467. And text-writers accept this as the prevailing rule. 2 *Cooley, Taxation,* (4th Ed.) sec. 1448; 3 *McQuillen, Municipal Corporations,* sec. 1107; *Black, Tax Titles,* sec. 152. On the contrary, in *Keller v. Wilson,* 90 Ky. 350, 14 S.W. 332, the court concluded that, notwithstanding some of the decisions just cited, a purchase by a city to save its taxes, which was regarded as a public purpose, was within its powers. And in *Berry v. Bickford,* 63 N.H. 328, the existence of the power was as-

sumed without comment. And see *Ebert v. Woodville,* 143 La. 874, 79 So. 521. While this court, as stated, has never before had the question argued, a practice of purchasing for the city at tax sales, existing in Baltimore City since near the middle of the last century, has passed without any expression of doubt of the city's power. See *Textor v. Shipley,* 77 Md. 473, 26 A. 1019, 28 A. 1060, and *Id.,* 86 Md. 424, 38 A. 932. There was a Baltimore ordinance directing a particular city official to purchase, but the city did not, of course, derive any power from its own ordinance. The power was assumed to exist, and the ordinance was a method of exercising it.

We have not found the argument leading to the conclusion that prevails elsewhere stated with any fullness. It has been explained that a municipality has only the powers expressly granted to it, and that, if the legislative or charter provisions for enforcement of taxes contain no express grant of power to a city to buy, it does not possess it. Again it has been reasoned that a limitation of a city's property ownership to property for public use, or some public purpose, precludes the purchase at tax sales, that a city is not intended to speculate in tax titles, or that it is against public policy for it to buy in. That these objections have not been regarded as practically prohibitive seems demonstrated by the enactment of enabling statutes in many jurisdictions, some of them authorizing municipalities to buy when there are no other bidders, some giving unrestricted power (see *Denver v. Keeler,* 48 Colo. 54, 108 P. 998; *Keller v. Hawk,* 19 Okl. 407, 91 P. 778; *Ohlwine v. Bushnell,* 32 S.D. 426, 143 N.W. 362; *Thibodeaux v. Havens,* 116 Miss. 476, 77 So. 313; *Chadwick v. City of Cambridge,* 230 Mass. 580, 119 N.E. 958) ; and it seems to this court impossible to assume that a municipality's purchase would not be for a public purpose but a speculation in the property. On the contrary, the probability would seem to be that no such purchase would ever be made except in the interest of the city, almost certainly to protect the recovery of the taxes overdue, which we regard as a public

510

purpose. The chancellor in the present case supposed this to be the purpose of the purchase; and there is no evidence of any purpose that was not public. That the property should, in addition, be only for use by the city while title is in it we see no reason to hold. Taking these conclusions to be correct, we find no sufficient ground for restricting the authority given the City of Cumberland, under the local law quoted, to purchase and hold real estate. We hold that it had that authority, to buy in at tax sales, at least before the adoption of a general enabling statute in the state.

An act of 1929, chapter 226, section 83, Code (Supp. 1935) art. 81, sec. 83, has provided that at sales for state and county taxes the county commissioners of any county, or the Mayor and City Council of Baltimore, may purchase. All the chief political divisions of the state, the several counties, and Baltimore City, which is the one equivalent of a county in the state, have been given this power, and it cannot be said that there is an omission of any one of the class of entities with which the words have dealt. The failure to mention city taxes seems obviously an omission which, if it is to be given importance at all, must, we think, leave the law with reference to sales for those taxes as it was. But the equal political divisions of the city and the counties have been confused and caused verbal omissions in several statutes in the past, and the intention to include sales for taxes of all the jurisdictions enumerated seems clear. *State v. Phillinger*, 142 Md. 365, 371, 120 A. 878; *Fitzwater v. Youghiogheny Hydro-Electric Corporation*, 149 Md. 461, 468, 469, 131 A. 776. Does, then, the omission from the statutory grant of any of the cities and towns within the counties, which lay and enforce taxes, have the effect to exclude them from possession of the power, on the familiar principle that enumeration of some jurisdictions means exclusion of others? An omission does not always have that effect, for there may be statutes passed to resolve doubts without intending to determine or disturb the law previously existing. *United States v. Barnes,*

222 U. S. 513, 32 S. Ct. 117, 56 L.Ed. 291. And in that case it would only impose a false meaning on the legislation to apply the rule of exclusion by omission. Here there seems to be no imaginable reason for excluding any taxing jurisdiction from the power to buy in property sold. It appears highly probable that the legislative draftsmen must have been aware of the established practice in Baltimore City, and to have had no intention of declaring that, under the rule previously existing, the city did not have the power exercised, and that all its purchases of tax titles were void. This reasoning leads us to the conclusion that the statute should not be construed as exclusive, so as to deny the power which we find the City of Cumberland to have possessed previously, under the provision in the local law.

As to the sufficiency of the notice given of the sale, we find that the local statutes, Code Pub. Loc. Laws, art. 1, sec. 122, and the general statute, Code Supplement, Pub. Gen. Laws, art. 81, sec. 189, etc., both require that a copy of the bill for unpaid taxes be left "with the party by whom the taxes are to be paid, or with one of them, if more than one, or at his or their usual place of abode, or at the usual place of abode of one of them, if said parties or any of them reside in said collection district for which the taxes are delinquent." The tax collectors are given authority to serve the notices, and in this instance the collector served notice on Mr. Wonn, of the trustees. His cotrustee, as already stated, was a resident of West Virginia. This seems to us a full compliance with the requirement. Though the widow and children of James L. Poling had not been served with notice, that does not detract from the effect of the notice to one party as required.

Another section of the General Laws, art. 81, sec. 190, requires that the sale upon the levy shall be made "after giving twenty days' notice of the time and place of sale by advertisement in at least one newspaper in the county or city." The advertisement was published once in a newspaper of Cumberland, on May 14th, 1932, and, the sale

512

having been made on June 3rd, 1932, there would not be twenty clear days between, and the appellant contends that there should be. We think not, as the statute is not so phrased as to require the clear days. When the words do direct that so many clear days shall intervene, this requirement must, of course, be met, but a mere requirement of twenty days' notice does not mean twenty clear days. In *Stewart v. Meyer,* 54 Md. 454, 463, a requirement that the day of sale should be after the expiration of thirty days' notice was found equivalent to a direction that the thirty days should intervene between advertisement and sale. But the present requirement of twenty days is similar to that approved in *Winter v. O'Neill,* 155 Md. 624, 634, 142 A. 263, 268, "In the computation of time, where there is no language indicating that the notice shall be so much clear time, or at least so many days, weeks or months, the rule is not to include or exclude both the day of first publication and the day of sale, but to include one and exclude the other." Under that rule the publication on May 14th, gave the requisite twenty days' notice of the sale on June 3rd. And see *Stiegler v. Eureka Life Ins. Co.* 146 Md. 629, 656, 127 A. 397.

The copies of the bills for taxes were left with the trustee, Mr. Wonn, on January 16th, 1931, and not until May 6th, 1932, did the court having jurisdiction to sell authorize the collector to make the sale, which was accordingly made on June 3rd. The collector entered upon the property and made his levy on May 10th, 1932. It is objected that the general statute, Code, art. 81, sec. 189, requires a warning of at least thirty days after the entry. But we think it not susceptible of that interpretation. It requires that warning of that length of time shall be given with the service of the tax bill or statement, which was done in January of the preceding year.

No error is found in the decree.

*Decree affirmed, with costs.*